## THOMPSON *vs.* THE STATE.

1. The act of 1836 (Clay's Digest, 509, § 11), authorizes the judge of the County (now Probate) Court, and makes it his duty, to fill any vacancy that may occur in the office of overseer of roads, from whatever cause, after a regular appointment has been made.

2. The true distinction between those irregular appointments to office which are void, and those which are voidable only, seems to be this: where the authority under which the officer assumes to act, shows upon its face that it emanates from a power which had no right to confer it, it is void; but where it is regular on its face, and emanates from a source which has the legal or constitutional right to bestow it, and it requires a resort to facts not disclosed in the commission or order of appointment, to show that the power of appointment has been illegally or irregularly exercised, the appointment is voidable only.

3. When an overseer of a road has been regularly appointed by the Commissioners' Court, and afterwards another overseer is appointed by the Judge of Probate, as in case of a vacancy, and the latter appointment is regular on its face, the person thereby appointed is *de facto* the overseer of the road, and his acts in opening it are valid as to the public and third persons, although the former is the overseer *de jure*.

4. When a person is indicted for obstructing a public road opened by an overseer *de facto*, he cannot defend his own misdemeanor under the overseer's supposed

want of authority, although the obstruction consisted in putting up his own fences, which the overseer had pulled down in opening the road.

5. It is no objection to the regularity of the appointment, that it is tested by the Judge of Probate *as clerk.*

6. When all the evidence given on the trial proceeds from the State, and it is without conflict, and establishes beyond a doubt the guilt of the accused, it is not error for the court to charge the jury, "that if they believed the testimony, they ought to find the defendant guilty."

ERROR to the Circuit Court of Talladega.

Tried before the Hon. ROBERT DOUGHERTY.

The plaintiff in error was indicted in the court below, for obstructing a public highway. On the trial in the court below, as appears by the bill of exceptions, the State showed an order of the Commissioners' Court of Revenue and Roads of Talladega county, establishing the road mentioned in the indictment, at the regular August term of said court, in the year 1850, and dividing it into precincts, and appointing overseers, who are ordered to open said road according to law. It was further proved, that the road so established, passed through the enclosure of the plaintiff in error, which was on her own land; that her lands were situated in the second precinct of said road, of which precinct William Jones was regularly appointed overseer at the August Term, 1850, of the Commissioners' Court, and he was duly notified of his appointment about the 1st of October, 1850; that he was then, and continued to be up to the trial in the court below, a citizen of Talladega county, residing near said road, and within five miles of the point obstructed; that he had never resigned or offered to resign his appointment as overseer; that he had never been removed from his overseership. It was further shown, that there was no term of the Court of Commissioners of Revenue and Roads held for said county of Talladega in the year 1851, until the first Monday in March of that year; that on the 24th February, 1851, the judge of the Probate Court appointed William F. Roberts overseer of the second precinct of the road aforesaid; that the said judge acted in said appointment without the knowledge of the commissioners of revenue and roads of said county, or any consultation with them; that under this appointment, of which he had been notified, Roberts proceeded to open the road on the line of

the second precinct thereof, and in doing so threw down two fences of the plaintiff in error, which ran across the route of said road on her land; that Jones, the first overseer appointed for this precinct of the road, had never opened it through the lands of the plaintiff in error, and that Roberts had no other authority for acting as an overseer than the order of appointment made by the judge of the Probate Court, which was served on him by the sheriff, and is in these words: "Ordered by the court that William F. Roberts be, and he is hereby appointed overseer of the second precinct, from Jamison's mill, extending to the McIntosh road, on the road leading from Burns' blacksmith shop to Wm. Easeley's old place, it being of the first grade. Witness Alexander J. Cotten, *ex officio* clerk of our said court, at office, this 24th day of February, in the year 1851.       A. J. COTTEN, Clerk."

It was also shown that the plaintiff in error objected and protested against opening said road through her enclosure, and the pulling down her fences by the said Roberts at the time he was doing it, and denied his authority to do so; that said Roberts had knowledge of the appointment of Jones as overseer before the 24th of February, 1851; that the alleged obstruction of said road consisted in putting up the fences by the plaintiff in error, which Roberts pulled down in opening the road, and keeping them up more than twenty-four hours, in March, 1851.

This was, in substance, all the proof offered in the case; and upon this evidence the court charged the jury: that if they believed all the evidence, the appointment of Roberts as overseer of said second precinct of said road, by the Probate Judge alone, was not void, but only voidable, and that they ought to find the defendant guilty. To this charge the defendant excepted, and asked the court to charge the jury, that, if they believed all the foregoing evidence, the appointment of said Roberts as overseer of said second precinct by the said Probate Judge was void. The court refused to give this charge, and the defendant excepted. The charge given, and the refusal to charge as asked, are here assigned as error.

RICE & MORGAN, for plaintiff in error:

1. To sustain this indictment, the State is bound to prove

that the road was a "*public road*," and that an impediment of some kind was erected across such public road. A *public road* is one which is not only *authorized*, but *opened*, by a *lawful authority*. The road in this case was only *authorized*, but not *opened* by *lawful authority*.

2. A road does not become a *public road, capable of such obstruction* as to subject the party obstructing *to indictment*, merely by being viewed and marked or laid out by the jury. Although it is viewed and marked or laid out by the jury, still it is not capable of such obstruction as to subject the party to indictment, until it is actually "*opened*" or "*cut out*" by *lawful authority*. Clay's Dig. 507, §§ 4 and 5; Peck v. Clark, 19 Ohio Rep. 367; The State v. Johnson, 11 Iredell's Law Rep. 647: Baker v. Wilson, 3 ib. 168; 3 U. S. Dig. 74, § 100.

3. There cannot be *two* overseers of the same precinct at the same time. There can be only *one*. He is to be appointed by the *Commissioners' Court*, and holds his office for the term of two years. And he cannot resign, unless he does so within ten days after he is served with notice of his appointment. Clay's Dig. 509, § 11; ib. 510, § 13; Spann v. The State, 14 Ala. Rep. 588.

4. The Commissioners' Court appointed Jones overseer of the precinct in question, at its August Term, 1850. Jones was served with a copy of his appointment, and has never resigned, nor been removed, and is under no disability. By this appointment of Jones, the court, and each member thereof, emptied and divested themselves of jurisdiction, and cannot resume it until it reverts to them by the occurrence of some of those events or disabilities, which, either temporarily or permanently, in judgment of law, *vacates* the office—such as the death of Jones, &c. Justices of Inf. Court v. Selman, 6 Georgia Rep. 432; Griffith v. Frazier, 8 Cranch, 9; Cummings v. Clark, 15 Vermont, 653; Eaton v. Fullet, 11 Illinois Rep. 491; Elliott v. Piersoll, 1 Peters Rep. 341.

5. By statute (Clay's Dig. 509, § 11), "*the judge of the County Court* shall have authority of making temporary appointments and filling vacancies which may occur from any cause." But such judge has no authority to *create* a vacancy, nor to appoint an *additional overseer*, when one has been already appointed by the court, and is under no disability.

Neither the judge nor the court can appoint an overseer, when there is already one in office who has not been removed, who has not resigned, and who is still living in the county, and under no disability, and has not served out his time. Shepard v. Lane, 2 Dev. Law Rep. 148; Powell v. The State, 15 Ohio Rep. 579. The want of jurisdiction may be shown, even in opposition to the recital of the record. 3 Phil. on Ev. 800–801; Harvey v. Huggins, 2 Bailey's Rep. 252.

6. The appointment of Roberts as overseer on the 24th of February, 1851, is *void*, for the reasons above shown, and also for the following reasons:

I. The office was filled by Jones; it was *the property* of Jones, and conferred on him certain privileges, powers, and exemptions; and he could not *be deprived* of them nor of the office in any such mode. Wammack v. Holloway, 2 Ala. Rep. 31; Hill v. The State, 1 Ala. Rep. 559; 9 ib. 345.

II. It purports to be the act of the *Commissioners' Court.* Thus regarding it, it is void on its face, because *the court* could not act at *that time* (24 February, 1851). It has its fixed terms, and this does not appear to have been an *adjourned term* or a *regular term.* 3 Phil. on Ev. 1003.

III. It cannot be sustained as an appointment by *the judge of the Court*, because he had no power to make it, and because it does not *appear on its face* that *he* either had power to make it, or that in fact *he* did make it. No appointment by the judge alone is valid, unless it appears on its face to be his act, and that it is a " temporary appointment" or the filling of "a vacancy." 3. Phil. on Ev. 1002, citing Ladbroke v. James, Willes' Rep. 199; Small v. Parnell, 31 Maine, 267; Denning v. Corwin, 11 Wend. 651; Allison v. Hampton, 11 Humph. Rep. 381; Bishop's Heirs v. Hampton, 15 Ala. Rep.; Harvey v. Huggins, 2 Bailey's Rep., 252.

IV. He was not the agent of the law, nor of the court, and his acts are incapable of confirmation. 2 Bouvier's Institutes, 27.

7. If the appointment of Roberts is not absolutely void, it is certain it could not take effect, or have any operation, until the first appointee (Jones) dies, or his office otherwise becomes vacant. The State *ex. rel.* Easley v. Spence, 7 Ala. Rep. 500.

8. Inasmuch as Jones had not opened the road, and Rob-

erts had no authority to do so, the acts of Roberts in going upon the land of Mrs. Thompson and pulling down her fences, were trespasses, not lawful official acts. And as the acts of Roberts were trespasses, it could not be an indictable offence for Mrs. Thompson to put up her fences. The court is bound to hold that the acts of Roberts were official lawful acts or trespasses. It is too plain for argument, that his acts are not lawful official acts.

9. The charge denies the plaintiff in error the benefit of such reasonable doubt as the jury might entertain of her guilt. The court-tells the jury to find her guilty if they believe the evidence. Now the jury might believe the evidence, and still entertain a reasonable doubt. Men may believe many things, and still have reasonable doubts about their existence.

Flournoy v. Clements, 7 Ala. Rep. has no application to this case. That was a case where the person came into office under color of lawful authority. Here there is no color. The appointment is void on its face, and is no justification, even to the appointee. He could not even be indicted as an overseer. Duckworth v. Johnson, 7 Ala. Rep. 578; Crampton v. Newman, 12 Ala. Rep. 199.

Neither the Commissioners' Court nor the lawful overseer, Jones, can ratify or adopt the act of Roberts in pulling down the fences and opening the road, because it was an act without lawful authority and void. Perkins v. Reed, 14 Ala. Rep. 536. This last case really overturns Flournoy v. Clements, 7 Ala. Rep.

The appointment of Roberts must be assailed collaterally, or else it cannot be assailed at all; because it was *ex parte;* and no certiorari or writ of error will lie to revise such appointment.

M. A. BALDWIN, Attorney General, WHITE & PARSONS, and J. J. HOOPER, for the State:

This case presents but this single question; are the official acts of a ministerial officer *de facto* valid when called collaterally in question? The following authorities are conclusive to show they are. Flournoy v. Clements, 7 Ala. 535; Plymouth v. Painter, 17 Cow. 585; People v. Covert, 1 Hill, 674; Wilcox v. Smith, 5 Wend. 232; McInstry v. Tanner,

9 John. 135; People v. Collins, 7 John. 551; Caskey v. The State, 6 Ala.

LIGON, J.—The act of 1836 (Clay's Dig. 509, § 11), provides that "the judge of the County (now Probate) Court shall have the authority of making temporary appointments, and filling vacancies, which may occur from any cause, in either of said offices, (apportioners of hands and overseers of roads), and is hereby required to do so." This act invests the judge of the Probate Court, without the aid of the Commissioners of Revenue and Roads, with full power to fill any vacancies in the office of overseer of roads, after a regular appointment has been made, and a vacancy arises from any cause whatever.

The power to make such appointments is as clearly conferred by this statute on the judge of the Probate Court, as that of appointing a sheriff, when a vacancy occurs in that office, is, by the constitution, given to the governor of the State. In the latter case, this court has held, that an appointment made by the governor, when a vacancy was supposed to have existed, when, in fact, none had really occurred, conferred on the appointee such right to exercise the functions of the office, as to render his acts done therein valid, so far as they concern the public and the rights of third persons. Such an appointment, emanating from the proper authority, and being regular on its face, will constitute the appointee a sheriff *de facto*, even though there be another who *de jure* is entitled to the office; and where the latter has ceased to perform the duties of the office, and the former does perform them, his acts are not void. Flournoy v. Clements et al., 7 Ala. Rep. 535.

Such an appointment is not absolutely void, but irregular, and voidable only. The true distinction between those irregular appointments to office which are void, and those which are voidable only, I apprehend to be this; where the authority under which the officer assumes to act, shows, upon its face, that it emanates from a power which had no right to confer it, it is void; but where it is regular on its face, and emanates from a source which has the legal or constitutional right to bestow it, and it requires a reference to facts not dis-

closed in the commission or order of appointment, to show that the power of appointment has been illegally or irregularly exercised, the appointment is voidable only. In the former case, all the acts of the appointee, done in reference to such appointment, are void for every purpose; while in the latter, they are valid as to the public and third persons; and this, for the reason, as it has been well said, that "the affairs of society cannot be carried on upon any other principle. 1 Stew. 182; 5 Wend. 231.

Apply these principles to the case under consideration, and it is clear that, although Jones was, *de jure*, the overseer of that part of the road which the plaintiff in error obstructed, yet, Roberts, having an order of appointment from the judge of the Probate Court, regular on its face, and emanating from the proper authority, was, *de facto*, overseer of the same road, and his acts in opening it are valid as to the public and the plaintiff in error. She could not, therefore, call them in question in a collateral proceeding, and cover her own misdemeanor under his supposed want of authority.

It is no objection to the regularity of this appointment, that it is tested by the judge of the Probate Court as clerk. By the act organizing that court, the judge is *ex officio* the clerk thereof, and having made the appointment of Roberts as judge, he was bound by law to issue a copy of the order appointing him as clerk, in which capacity the copy in this record seems to have been issued. Clay's Dig. 509, §§ 11 and 12. The court, therefore, did not err in instructing the jury that the commission of Roberts was not void.

It is insisted, however, that the court erred in that portion of the charge in which the jury was instructed, that "if they believed the testimony, they ought to find the defendant guilty." It is urged that this charge was wrong, as it tended to deprive the accused of the benefit of any reasonable doubt of her guilt, which the jury might entertain. We do not so understand it. The testimony recited in the bill of exceptions is said to be all, or the substance of all, which was given on the trial. It proceeded entirely from the State; it is without conflict, and establishes, beyond a doubt, the guilt of the accused. But a single point appears to have been made in the defence, viz: that Roberts had no authority

under his appointment, to open the road, and of this the court was the proper judge, as it involved a conclusion of law, and not of fact. Under these circumstances, it was not error for the court to say to the jury, that, if they believed the evidence, they should find the accused guilty.

We have repeatedly held, that, where the testimony proceeds altogether from one party, and involves no conflict, the court may draw its own legal conclusion, and give it in charge to the jury. If the party against whom such charge is given desires it to be qualified, he must request the court to do so. 20 A. R. 179; 15 ib. 176; 13 ib. 713; 6 ib. 753; 1 ib. 623; 7 Por. 258; 9 ib. 39. There is no tendency in such a charge to deprive the accused of the benefit of all reasonable doubt of her guilt which the jury might entertain; for, if the testimony was credible, her guilt was placed beyond all reasonable doubt, and the question of the degree of credit to which it was entitled was expressly referred to the jury in the charge itself; for, I take it, that no man can be said to believe testimony, when he has a reasonable doubt of its truth.

Let the judgment be affirmed.