STATE OF MINNESOTA *ex rel.* Robert M. Addison *vs.* JAMES W. WILLIAMS and another. ,

### January 10, 1879.

**Mandamus to deliver records of office—Title in Controversy.**—At the general election, in November, 1876, W. was elected treasurer of Lyon county, for a term regularly expiring in March, 1878. He qualified, entered upon the duties of his office, and still continues to discharge said duties, and is in possession of the records and other property appertaining thereto. At the general election, in November, 1877, W. was duly elected a member of the house of representatives of this state, and on January 8, 1878, he entered upon the duties of such membership, and continued to discharge the same. On January 22, 1878, the board of commissioners of said county determined that by reason of W.'s election to the office of representative, his acceptance thereof and entry upon its duties, a vacancy had been effected in the office of county treasurer, under the first clause of section 9, article 4, of our constitution, and they therefore appointed A. to fill the same. A certificate of his appointment having been delivered to A., he accepted the appointment, duly qualified, notified W.'s deputy treasurer, who was in possession of the records and other property of the office, of his said appointment, and demanded possession of said records and property. Possession being withheld, he seeks to compel delivery thereof by the present proceeding in mandamus. This case distinguished from the class of cases represented by *Crowell* v. *Lambert*, 10 Minn. 295 (369,) and *Atherton* v. *Sherwood*, 15 Minn. 221, and *held* to be a case in which the title of W., the *de-facto*

incumbent of the office of county treasurer, is directly and unavoidably in controversy, although the proceeding is in form an action not for the determination of the title, but for the recovery of possession of the records and other property of such office. In such a case mandamus does not lie.

Mandamus to obtain possession of the records, etc., of the office of treasurer of Lyon county.

*Baxter & Quinn,* for relator.

*Gilman & Clough,* for respondents.

BERRY, J.   At the general election in November, 1876, the respondent Williams was duly elected treasurer of the county of Lyon, for a term regularly expiring in March, 1878. After qualifying, he entered upon the duties of his office, and he still continues to discharge the duties thereof, and remains in possession of the records and other property appertaining thereto.

At the general election in November, 1876, Williams, while county treasurer, was duly elected a member of the house of representatives of this state, and on January 8, 1878, he accepted such membership, entered upon its duties, and thereafter continued to discharge the same.   On January 22, 1878, the board of county commissioners of Lyon county determined that by reason of Williams's election to the office of representative, his acceptance thereof, and entry upon its duties, a vacancy had been effected in the office of county treasurer, and thereupon they appointed the relator to fill it. A certificate of his appointment was delivered to the relator, by whom the appointment was thereupon accepted, and having duly qualified as provided by statute in the case of a county treasurer, and having notified the respondent Webster —who had been appointed by Williams deputy treasurer, and who was in possession and charge of the records and other property of the county treasurer's office—that he had been so appointed treasurer as aforesaid, he demanded possession of said records and property.   Possession being withheld, he seeks to compel delivery of the same by the present proceeding in mandamus.

The action of the county board, in determining that the vacancy existed, was based upon the first clause of section 9, article 4 of our state constitution, which provides that "no senator or representative shall, during the time for which he is elected, hold any office under the authority of the United States, or the state of Minnesota, except that of postmaster."

The respondent Williams contends that the controversy before us is as to the title to the office of county treasurer, that the appropriate proceeding is therefore one in the nature of *quo warranto*, and that consequently the present proceeding by mandamus cannot be maintained. We think this is so. Unless his election to, his acceptance and entry upon the duties of the office of representative, operated to deprive Williams of the office of treasurer, the relator's appointment is an absolute nullity. The question whether the relator has any right to the office depends altogether upon whether Williams has any title to the same. That question lies at the threshold of the controversy. The relator cannot move a step until he has first made it to appear that Williams's title is at an end. Until he has done this, his certificate of appointment is *prima-facie* evidence of nothing. And right here lies the distinction between the case at bar and the class of cases represented by *Crowell* v. *Lambert*, 10 Minn. 295 (369,) and *Atherton* v. *Sherwood*, 15 Minn. 221. In that class of cases—in which the question is, who is *prima-facie* entitled to the possession of the records and other property of a given office?—the certificate of the auditor, which is conclusive until it is affirmatively overthrown, is properly held *prima-facie* evidence that the person named in it has been elected, and is therefore, if he has duly qualified, entitled to the possession of the records and other property of the office. In that class of cases, the title to the office is not finally adjudicated; but the question of *prima-facie* right is properly regarded as settled by the auditor's certificate. But the case at bar is another thing entirely, because the question of title must be examined and determined against Williams, the incumbent *de facto* of the

office, before the relator's certificate of appointment can possess any value whatever. The case, then, is one in which the *title* of the office is directly and unavoidably in controversy, although the action is in form an action, not for the determination of the title, but for the recovery of possession of the records and other property of the office. The case falls, then, within the rule laid down by Mr. High, that "if it be apparent to the court that, instead of a proceeding whose object is only to get possession of the books and insignia of the office, the writ is invoked in reality to test the title to the office, and that the question of title is the real point in issue, it will refuse to lend its aid by mandamus. In all such cases, the parties will be left to a determination of the disputed questions of title, by proceedings upon information in the nature of a *quo warranto*, since this is the only remedy by which judgment of ouster can be had against an actual incumbent, and the person rightfully entitled can be put into possession of the office. The court will not, therefore, upon an application for a mandamus to procure possession of official records, inquire into the right of a *de-facto* incumbent of the office; and if it is apparent that the relator's rights cannot be determined without such an investigation into respondent's title, mandamus will not lie." High on Remedies, § 77, and citations; see, also, §§ 49, 50, and citations. This rule appears to be exactly applicable to the present proceedings, which must therefore fail.

As a matter of first impression, it might be thought a sacrifice of substance to form to require the relator to resort to a *quo warranto*, rather than afford him the desired relief in the proceedings now before us—a mere turning him out of one door, to bid him enter at another. But a little reflection will show that this is a mistake. First, Gen. St. *c.* 80, § 3, provides that the writ of mandamus "shall not issue in any case where there is a plain, speedy and adequate remedy in the ordinary course of law;" and see High on Remedies, § 49, and cases cited. In the second place, the usurpation or wrongful

holding of a public office is a public wrong. Like other pub-
lic wrongs it should be redressed by public authority, (High
on Remedies, §§ 69, 70, and authorities cited;) and in ac-
cordance with this idea, our statute commits and entrusts the
authority to institute and conduct proceedings of this kind
solely to the attorney general. Gen. St. *c.* 79, § 3.

Proceedings dismissed.