FREDERICK R. FULTON and Another v. TOWN OF ANDREA.[1]

December 13, 1897.

Nos. 10,689—(69).

**Municipal Bonds—Validity—Chairman of Board de Facto—Vacancy in Office—Appointment.**

An appointment to the office of chairman of the board of supervisors of the defendant town, made by the appointing board thereof, having by law the power to appoint only in case of a vacancy (which vacancy they assumed really existed), and the acceptance of the appointment by the person therein named, and his entering into possession of said office and discharging its duties, constitute him the chairman of the board de facto, although no vacancy in fact existed. Hence bonds of said town issued by said board were valid obligations.

**Officer de Jure and de Facto—Possession of Office.**

A person in possession of an office may be an officer de facto, while some other person may be the officer de jure, though there cannot be an officer de jure and an officer de facto, both in possession of the same office at the same time.

**Same—Evidence—Color of Appointment.**

The evidence in this case shows conclusively that the person appointed to fill the office of chairman of the board of supervisors entered into the actual possession of such office and discharged its duties as a de facto officer under color of an appointment emanating from a power having authority to confer it, and that in doing so he was not a usurper or intruder.

**Findings—Estoppel by Judgment.**

*Held*, also, that certain findings of facts were insufficient to constitute an estoppel by judgment.

Action in the district court for Wilkin county to recover $160, the amount due upon coupons numbered 4 and 5 of two certain bonds issued in the name of the defendant town and signed by one Perry C. Heath, as chairman of its board of supervisors. The answer denied the execution and delivery of the bonds and alleged that at the time of their pretended execution and delivery one Philip Heider was chairman of its board of supervisors. The answer also set up that in an action in the same court between one

[1] Reported in 73 N. W. 256.

Weiser, former owner of these coupons, and this defendant to enforce payment of coupons numbered 1, 2 and 3 of the same bonds, judgment was entered in favor of this defendant, that said bonds and coupons were void and of no effect. From a judgment that the bonds and coupons mentioned in the complaint were null and void, entered pursuant to findings and an order of C. L. Brown, J., plaintiffs appealed. Reversed.

*Ezra G. Valentine* and *Burke Corbet*, for appellants.

If the township board believed that a vacancy existed, under G. S. 1894, § 962, it had a right to fill the vacancy thus assumed to exist. Nichols v. MacLean, 101 N. Y. 526, 538; Gregg v. Jamison, 55 Pa. St. 468; Ellison v. Aldermen, 89 N. C. 125; Diggs v. State, 49 Ala. 311; Watkins v. Inge, 24 Kan. 612; McLean v. State, 8 Heisk. 22; Carli v. Rhener, 27 Minn. 292; Boardman v. Halliday, 10 Paige, 223. Heath was an officer de facto of the township and so far as his acts concerned the purchasers of the bonds and interest notes, they are valid and will bind the township. King v. Philadelphia, 154 Pa. St. 160; Magneau v. City, 30 Neb. 843.

If different proofs are required to sustain two actions, a judgment in one of them is no bar to the other. Stone v. U. S., 64 Fed. 667, 671; Fishburne v. Engledove, 91 Va. 548. No man ought to be bound to proceedings to which he was a stranger. Greenleaf, Ev. §§ 522, 528. To constitute res adjudicata the judgment should have been pronounced between the same parties. Herman, Est. § 85. Separate coupons have the effect of separate notes or securities and as such are separate causes of action. 2 Daniel, Neg. Inst. § 1489. Cromwell v. County, 94 U. S. 351; Nesbit v. Independent, 144 U. S. 610; Town v. Jordan, 119 U. S. 680; County v. Marcy, 97 U. S. 96; Carroll v. Smith, 111 U. S. 556. Not only may a suit be maintained upon an unpaid coupon in advance of the maturity of the principal debt, but the holder of the coupon is entitled to recover interest thereon from its maturity. Amy v. Dubuque, 98 U. S. 470.

*Houpt & Baxter*, for respondent.

G. S. 1894, § 892, subd. 4, provides under what circumstances an office becomes vacant, and section 963 directs how a vacancy shall be filled. It is the rule that purchasers of municipal bonds must

take the risk of the official character of the persons who execute them. Bissell v. Spring, 110 U. S. 162. Two persons cannot be officers de facto for the same office at the same time. Carli v. Rhener, 27 Minn. 292. This action is barred by the former action and the judgment rendered therein as set forth in defendant's answer. Snowman v. Harford, 57 Me. 397; Leslie v. Bonte, 130 Ill. 498; Cromwell v. County, 94 U. S. 351; Aspden v. Nixon, 4 How. 467.

BUCK, J.

This action was brought to recover the amount due on several coupons attached to a couple of bonds of five hundred dollars each issued by the town of Andrea, defendant herein, dated June 18, 1887, under the provisions of Sp. Laws 1883, c. 135, and the acts amendatory thereof.

These bonds were issued upon the petition, duly signed, of two-thirds of the legal voters of the town, asking, for the purpose of raising the sum of one thousand dollars for the construction of public roads within the township, that the town issue and sell its bonds, with coupons attached, and that the money obtained from the sale thereof be used under the direction of the supervisors in the purchase of a New Era road grader. After due trial of the grader it was purchased for the consideration of said bonds, which were delivered to the agent of the New Era Manufacturing Company, and for value, before maturity, it sold said bonds to these plaintiffs, who sold them to one Weiser, and subsequently plaintiffs repurchased them, and are now the holders and owners thereof.

During the years 1887 and 1888 this grader was used by the road and district officers of said town and by the citizens thereof upon the roads of said town, and it has remained in said town ever since. There is no question of fraud or failure of consideration or defect in the construction or operation of the grader, but some time in 1888 the then chairman of the board of supervisors refused to give his consent to the use of the grader on the ground that the town did not own it, and the defendant town refuses to pay the past-due coupons attached to said bond.

Its refusal to pay these coupons and further to use the grader, is based upon the following facts: In March, 1887, one Philip Heider

was duly elected to the office of chairman of the board of supervisors of the town of Andrea, Wilkin county, in this state, and thereafter duly qualified as such officer, and entered upon the discharge of the duties of said office. On June 15, 1887, Heider departed from the state of Minnesota on a "prospecting tour" throughout the West, with the expressed intention, when he left, to remove permanently from this state in case he could find a more suitable location elsewhere; otherwise he intended to return to and remain a resident of this state and said town. In about three weeks after his departure he returned to said town, and ever since has remained a resident thereof.

On June 18, 1887, and after said taxpayers had presented said petition to the board of supervisors, said Heider being absent from the state, the duly-constituted appointing board of said town was convened, and, assuming that a vacancy existed in the office of chairman of said board of supervisors, appointed one Perry C. Heath to said office, who immediately thereafter qualified and discharged the duties of said office. After the appointment of said Heath as aforesaid, and on June 18, 1887, the said town board of supervisors, said Heath acting as a member thereof, met at the office of the town clerk of said town for the purpose of considering the said petition. Said board then and there voted to issue the bonds of said town, with interest coupons attached, in the sum of one thousand dollars, for the purchase and in payment of a New Era road grader, manufactured and sold by the New Era Manufacturing Company. Pursuant thereto the said Heath, acting as chairman of said board, and C. H. McCausland, the duly elected and qualified clerk of said town, executed the bonds set forth and described in the complaint, and deposited them with the said town clerk to abide the result of the trial of said road grader.

Several legal questions have been raised and discussed in the briefs of the respective counsel, but only two seem necessary for us to pass upon in the determination of this case, and one of them is this: Was Perry C. Heath, at the time he signed these bonds as chairman of the board of supervisors of the town of Andrea, an officer de facto? If so, the judgment entered in the trial court in favor of the defendant must be reversed.

On reading the vast number of decisions, both English and American, as to what constitutes an officer de facto, one would naturally suppose that this question had been definitely placed at rest, notwithstanding the numerous difficult questions to which it has given rise.

In modern cases the generally accepted definition of an officer de facto is that given by Lord Ellenborough, as follows: "One who has the reputation of being an officer he assumes to be, and yet is not a good officer in point of law." Rex v. Corporation, 6 East, 356. While some of the courts, as a corollary from this definition, hold that "there must be some color of an election or appointment or an exercise of the office, and an acquiescence on the part of the public for a length of time which would afford a strong presumption of at least a colorable election or appointment," other decisions recognize a broader rule, tending to hold that actual possession of the office, without regard to the mode in which possession was acquired (unless, perhaps, where it was by a forcible usurpation), suffices to constitute the incumbent a good officer de facto. Throop, Pub. Off. §§ 625, 626.

In this case the broader rule need not be invoked, for the facts would bring it within Lord Ellenborough's definition of an officer de facto. Heath came into the office by and through an appointment which the appointing board had the power to make if there existed a vacancy. This board assumed that a vacancy actually existed, and by their acts declared that a vacancy actually did exist, and appointed Heath to fill it. He qualified, and entered upon the discharge of his duties. He was not a usurper or intruder, in the ordinary sense in which that term is used. He did not act without color of title to the office, nor did he enter into the office until the regular and legally designated appointing board had authorized him to do so. The two other supervisors and the town clerk recognized and acted with him, not only as an officer de facto, but as one de jure, and certainly the public or third persons had a right to rely upon his being the officer he actually assumed to be. Third parties, seeing him publicly exercising the duties of his office in connection with other reputed and actual members of the board,

70 M.—29

were not required to investigate his title to the office which he assumed to fill, and then actually filled. If he was not there by virtue of a legal election or appointment, he was there by color of right, and by virtue of a power which had the right to fill a vacancy.

In Throop on Public Officers (section 633) the doctrine is thus stated, viz.:

" 'The true distinction between these irregular appointments to office which are void and those which are voidable only I apprehend to be this: Where the authority under which the officer acts shows, upon its face, that it emanates from a power which had no right to confer it, it is void; but where it is regular on its face, and emanates from a source which has the legal or constitutional right to bestow it, and it requires a reference to facts not disclosed in the commission or order of appointment to show that the power of appointment has been illegally or irregularly exercised, the appointment is voidable only. In the former case all the acts of the appointee done in reference to such appointment are void for every purpose, while in the latter they are valid as to the public and third persons; and this, for the reason, as it has been well said, that the affairs of society cannot be carried on upon any other principle,' " citing Thompson v. State, 21 Ala. 48, per Ligon, J., pp. 54. 55.

The case was one where a person had been regularly appointed overseer of a road by the commissioners' court, and afterwards another was appointed such overseer by the probate judge, who had by law power to appoint only in case of a vacancy, and the latter entered into possession of the office. It was held that he was an officer de facto, and that his acts in opening a road were valid, although the former was the officer de jure. So the appointment of a sheriff by a county judge without authority suffices to render him an officer de facto, within the rule validating such an officer's acts. People v. Roberts, 6 Cal. 214. A tax sale confers a good title, although made by a county treasurer appointed by the county commissioners when in fact there was no vacancy in the office. Watkins v. Inge, 24 Kan. 612. Many other authorities are to the same effect.

The respondent contends that the trial court ruled correctly when it held that there could not be an officer de jure and one de facto in possession of the same office at the same time; citing Carli v. Rhener, 27 Minn. 292, 7 N. W. 139, in support of this proposition.

There can be no controversy upon this point, but the proposition is not applicable to this case. The record shows that Heider was not in the actual possession of the office, although the officer de jure. There might be an officer de facto in possession of the office, although at the same time there is also one de jure not in possession. It is quite evident that Heider was not in possession of the office. He was not even in the state, and his return thereto quite uncertain. While beyond the limits of the town and state, he could not meet with his associate members of the board, consult with them, and then act in his official capacity upon matters then before them. Instead of discharging the duties of his office, he had voluntarily gone beyond the jurisdiction for which he was elected, and was attending to business of his own, and not that of the public, and he then had no actual control over the office and was performing no act of possession.

On the contrary, Heath was in actual possession of the office, had the same under his control, and was placed there by authority emanating from a power having the right to fill a vacancy. The act of appointment was one of public notoriety, apparently intended to be one of public interest and for the public welfare, and he was discharging the duties of the office under claim of right, and in conjunction with the other members of the board who were de facto and de jure officers, and who recognized Heath as an officer actually in possession. The petition for raising the sum of one thousand dollars, by issuing and selling these bonds to purchase a road grader, was presented to the board of supervisors, signed by more than two-thirds of the legal voters of the town, while Heath was an acting member thereof.

It thus appears that in a matter of great public concern these legal voters of the town recognized him as an officer de facto, and apparently as one de jure, and also as one who at least, as Lord Ellenborough says, was "one who has the reputation of being an officer he assumes to be." It is probably doubtful if a case can be found in the books where there were more complete, existing facts constituting a person an officer de facto than that of Heath in this instance. Hence the rule laid down in Carli v. Rhener, supra, is applicable to this case, viz. that a person having and claiming color

of title to an office by election or appointment, and in the exercise of its functions and duties, and in possession of it, is an officer de facto, and his acts as such officer are valid as respects the public and persons interested therein.

Certainly, when more than two-thirds of the legal voters of the town and other town officers had recognized him as the legally acting chairman of the board of supervisors, and he had acted accordingly, and the town had thereby received full consideration for its bonds issued as above stated, it ought not to be permitted to question or repudiate them.

Upon the proposition that the judgment in the action brought by Weiser (the original owner of the bonds) against the town on the three coupons first maturing is binding and conclusive on the plaintiff, it is enough to say that a mere finding that the allegations in the answer as to the commencement and result of an action by Cornelius I. Weiser against said town are true is entirely insufficient as a finding of facts necessary to constitute an estoppel by judgment against the plaintiff. It is only necessary, in this connection, to call attention to the familiar rule that privies, in such a sense that they are bound by the judgment, are those who acquired an interest in the subject-matter after rendition of the judgment (Black, Judgm. § 549); also to the proposition that the pendency of a suit relating to the validity of negotiable paper not yet due is not constructive notice to subsequent holders thereof before maturity (Enfield v. Jordan, 119 U. S. 680, 7 Sup. Ct. 358).

Judgment reversed.