STATE OF MINNESOTA *ex rel.* MOSES E. CLAPP, Atty. Genl., *vs.* HANS
O. PETERSON.

Argued May 27, 1892. Decided June 22, 1892.

**Laws 1881, ch. 108, Constitutional.**

Laws 1881, ch. 108, providing for the suspension and removal of county
treasurers for malfeasance or nonfeasance in office, is valid.

**Governor may be Empowered to Remove.**

Under the constitution, Art. 13, § 2, the legislature has authority to
vest the power of removing inferior officers in the governor.

**Same—Includes Power to Suspend Pending Trial.**

The power to remove includes the power of temporary suspension
pending the trial of the officer.

**Same—Suspension Takes Effect When.**

An order of suspension only takes effect and becomes operative when
issued and served, and the mere fact that the governor performed the
manual act of signing it out of the state will not render it void.

Information filed in this court April 16, 1892, by Moses E. Clapp,
Attorney General, praying that its writ issue to Hans O. Peterson,
commanding him to appear and show *quo warranto* he holds the of-
fice of County Treasurer of Hennepin County.   On the order of the
Chief Justice the writ issued returnable April 28, 1892, at the open-
ing of court on that day.   The information stated that the respond-
ent Hans O. Peterson was duly elected County Treasurer for the term
commencing January 5, 1891; that he accepted the office, and on
March 21, 1892, the Public Examiner made report to the Governor
that Peterson had not properly accounted for $1,278, received by
him in June, 1891, from the City of Minneapolis, and that Peterson
had received $515.35 interest on deposits of County funds in banks,
which interest he had not accounted for as county funds.   It further
stated that the Governor thereupon suspended Peterson from his of-
fice by an order made March 26, 1892, and gave notice thereof to
the County Auditor, and that the Auditor notified the County Com-
missioners and called a meeting of that Board to appoint a Treas-
urer *ad interim;* that they met and appointed T. J. Buxton, who ac-
cepted and gave bond and took the oath of office, and on April 4,

1891, demanded of Peterson possession of the office and of the public property in his custody; that Peterson refused to deliver over the office or property, but held, used, and usurped the office without right or warrant, and contrary to law.

The respondent appeared and demurred to the information, that it did not state facts sufficient to constitute a cause of action; that Laws 1881, ch. 108, contravenes the Constitution, and that the suspension was not made within this state.   On his request the information was amended so as to state that the Governor was at Chicago, Ill., when the order of suspension was made by him.

*Moses E. Clapp*, Atty. Genl., and *H. W. Childs*, for relator.

It is immaterial where the Governor signed the order suspending Peterson from his office of County Treasurer.   It was attested by the Secretary of State and sealed with the great seal of the State, and is not to be questioned by this court in this matter.   Nowhere more than in the case at bar will the court feel inclined to observe the limitations of the respective jurisdictions of the three departments of government.   It is always observant of the right of one of those departments, even in trivial affairs, to protect itself from the encroachments of the others, and it must be a plain case indeed where an act of the chief executive, done with due deliberation and solemnity, will be declared void by the court.   Supplement, 135 Mass. 596; *Appeal of Hartranft*, 85 Pa. St. 433.

At a very early day, it was *res judicata* in the office of the Attorney General, that the temporary absence of the Governor, is not such a vacancy as would authorize the Lieutenant Governor to exercise the duties of Governor *ad interim*.   Opinions Attorneys General, 41.

On its face the order appears to have been made at the capital of this State; and although it may have been in fact signed beyond the boundaries of the State, it cannot be possible that such fact will vitiate the signature, or the order of suspension.   As the custodian of the chief executive power, it is for the Governor alone to say when or how he shall exercise that power.   *State* v. *Warmoth*, 22 La. Ann. 3; *Western Railroad Co.* v. *DeGraff*, 27 Minn. 1; *Rice* v. *Austin*, 19 Minn. 103, (Gil. 74.)

When the Governor is absent from the State for a short time his commands are given by telegram, or through the mails or otherwise, to his confidential subordinates; and offices are filled, men are extradited, and all the important functions of that department are performed in his absence as though he were present. A document issuing from the executive chamber bearing the name of the Governor, must be everywhere received unchallenged and unquestioned. This is really an administrative question which the Governor determines for himself. He may err in judgment and labor under a misapprehension as to the scope of his official duty under the law, but the responsibility rests with himself alone. The law must leave the final decision upon every claim and every controversy somewhere, and when that decision has been made, it must be accepted as correct. The presumption is just as conclusive in favor of executive action, as in favor of judicial. *Sutherland* v. *Governor*, 29 Mich. 321.

The law of 1881, ch. 108, is not unconstitutional. Const. Art. 13, § 2; *Dullam* v. *Willson*, 53 Mich. 392; *Page* v. *Hardin*, 8 B. Mon. 672; *Clay* v. *Stuart*, 74 Mich. 411; *State* v. *Doherty*, 25 La. Ann. 119; *Keenan* v. *Perry*, 24 Texas, 260.

A similar question was really involved in the case of *State* v. *State Board of Medical Examiners*, 34 Minn. 387.

An office is not a contract, and the incumbent is not protected by the provisions of the Federal constitution against the impairment of the obligation of a contract. *Donahue* v. *County of Will*, 100 Ill. 94; *Conner* v. *Mayor, etc.*, 5 N.Y. 285; *Hyde* v. *State*, 52 Miss. 673; *Allen* v. *State*, 32 Ark. 243; Mechem, Pub. Of. § 345; *Commissioners of Hennepin Co.* v. *Jones*, 18 Minn. 199, (Gil. 182.)

Power to remove carries with it the right to suspend. *Shannon* v. *Portsmouth*, 54 N. H. 183; *Westberg* v. *City of Kansas*, 64 Mo. 493; *State* v. *Police Com'rs*, 16 Mo. App. 50.

A judicial sentence is not essential to remove from office. *State* v. *Prince*, 45 Wis. 610; *Ex parte Wiley*, 54 Ala. 226; *State* v. *Frazier*, 48 Ga. 137; *Patton* v. *Vaughan*, 39 Ark. 211; *State* v. *Hawkins*, 44 Ohio St. 98; *People* v. *Whitlock*, 92 N. Y. 191.

*Jas. W. Lawrence, Rea & Hubachek,* and *Kitchel, Cohen & Shaw,* for respondent.

The Governor had not the power to execute the order of suspension outside the State. The only issue of law before the court on this branch of the case is, was the Governor while outside the limits of the State, clothed with authority to execute the order suspending the respondent from office? If it was not lawful for the Governor to execute the order outside the State, the order is invalid, and respondent is not bound to submit to it. He submits his contention to this court. His present right to exercise the functions of his office depends upon the decision of the question thus raised. The people created this court, clothed it with ample power, and imposed upon *it* the duty to decide this, and all like controversies. *De Chastellux* v. *Fairchild,* 15 Pa. St. 18; *Appeal of Hartranft,* 85 Pa. St. 433; *Mayor of Baltimore* v. *State,* 15 Md. 376; *State* v. *Fidelity & Cas. Ins. Co.,* 39 Minn. 538.

No act authorizing the Governor to remove an elective officer can be constitutional. The power of removal is judicial in its nature, and can be exercised only by the judicial officers of the government. *Page* v. *Hardin,* 8 B. Mon. 672; *State* v. *Pritchard,* 36 N. J. Law, 101; *Dullam* v. *Willson,* 53 Mich. 392; *People* v. *Stuart,* 74 Mich. 411; *Metevier* v. *Therrien,* 80 Mich. 187; *Honey* v. *Graham,* 39 Texas, 1; *Territory* v. *Ashenfelter,* 4 N. M. 85.

The Constitution, Art. 13, § 2, does not authorize the Legislature to provide for the removal of a county treasurer except by a proceeding in the courts of the State. The constitutional authority given to the Legislature to provide for a removal does not carry with it the right to provide for the suspension of inferior officers. *Gregory* v. *Mayor, etc.,* 113 N. Y. 416.

Assuming that the Legislature might confer upon the Governor the power to suspend and remove a county officer, Laws 1881, ch. 108, is unconstitutional. An examination of the Act shows the following memorable features: the treasurer is suspended before hearing, and before the formulation of any charges against him. § 1. No charges are reduced to writing or furnished to the treasurer until

after the order of suspension has issued, and until after he notifies the Governor that he desires a hearing. § 3. *Bardwell* v. *Collins*, 44 Minn. 97; *Feller* v. *Clark*, 36 Minn. 338; *In re Invest. Comn.*, 16 R. I. 751.

MITCHELL, J. The respondent, by his demurrer to the information, assails the constitutionality of Laws 1881, ch. 108, providing for the supension and removal of county treasurers, by the governor, for malfeasance or nonfeasance in office.

His contention is that the power of removal from office is judicial in its nature, and can be exercised only by the judicial tribunals of the state; and that, under the constitution, the legislature has no authority to provide for the removal of a county treasurer except by judicial proceedings in court.

Whether the power of removal from office for official misconduct is judicial in its nature is a question that has been much discussed, and upon which the courts in this country are not agreed. Some courts hold the affirmative, seeming to proceed upon the ground that an incumbent has a property in his office, of which he cannot be deprived without the judgment of a court, after due notice and a hearing. This view is, of course, in accordance with the doctrine of common law, which regarded an office as a hereditament. See *State* v. *Pritchard*, 36 N. J. Law, 101; *Dullam* v. *Willson*, 53 Mich. 392, (19 N. W. Rep. 112.)

Other authorities hold that the power of removal from office is administrative, and not judicial. These proceed upon the theory that, under our system of government, public office is a public trust, and not private property; that the right to exercise it is not based upon any contract or grant, but that the office is conferred upon the incumbent as a public agent, to be exercised for the benefit of the public. See *State* v. *Hawkins*, 44 Ohio St. 98, (5 N. E. Rep. 228;) *Donahue* v. *County of Will*, 100 Ill. 94.

In view of the express provisions of the constitution of this state it is unnecessary to determine which of these doctrines is correct. It may be conceded, for the purposes of this case, that the power of

removal from office is judicial, and that an incumbent cannot be removed except after notice and a hearing.

Article 13 of the constitution, after providing in section 1 for the removal of state officers and judges of the supreme and district courts by impeachment, then provides in section 2 that "the legislature of the state may provide for the removal of inferior officers from office for malfeasance or nonfeasance in the performance of their duties."

The power thus conferred is plenary, and confers authority upon the legislature to vest the power of removal, and the determination of the question whether cause for removal exists, in any department of the government, or in any officer or official body, it may deem expedient.    There is no requirement that this power shall be conferred only on the courts.    Indeed, the very purpose of this provision was to provide a more summary and less cumbersome method of removing inferior officers than by impeachment or by indictment, according to the course of the common law, for malfeasance or nonfeasance in office.    If, then, the power of removal vested in the governor by this act be judicial, we have here the constitutional authority for it.

But, says respondent, authority to provide for the removal does not carry with it the power to provide for the suspension of an officer.    Whether the power to suspend is included generally in the power to remove, so that the former may be exercised independently of the latter, we need not consider.    But we are very clear that the power of temporary suspension, so far as necessary and ancillary to the power to remove, is included in the latter.    This is under the familiar doctrine of implication, that, where a constitution gives a general power or enjoins a duty, it also gives by implication every particular power necessary for the exercise of the one or the performance of the other.    Cooley, Const. Lim. 78.

As is well said in *State* v. *Police Com'rs*, 16 Mo. App. 50: "The suspension of an officer pending his trial for misconduct, so far as to tie his hands for the time being, seems to be universally accepted as a fair, salutary, and often necessary incident of the situation.    His retention at such a time of all the advantages and opportunities af-

forded by official position may enable and encourage him, not only to persist in the rebellious practices complained of, but also to seriously embarrass his triers in their approaches to the ends of justice." These considerations have especial force as applied to officers intrusted with public moneys. The running of the governmental machinery is so intimately connected with and dependent upon the public treasury that, unless summary power and a speedy remedy be lodged somewhere, great danger to the public may ensue.

The safety of the state, which is the highest law, imperatively requires the suspension, pending his trial, of a public officer,—especially a custodian of public funds,—charged with malfeasance or nonfeasance in office. Suspension does not remove the officer, but merely prevents him, for the time being, from performing the functions of his office; and from the very necessities of the case must precede a trial or hearing. Such temporary suspension without previous hearing is fully in accordance with the analogies of the law. It is a constitutional principle that no person shall be deprived of his liberty or property except by due process of law, which includes notice and a hearing, yet it was never claimed that in criminal procedure a person could not be arrested and deprived of his liberty until a trial could reasonably be had, or that in civil actions *ex parte* and temporary injunctions might not be issued and retained in proper cases, until a trial could be had, and the rights of the parties determined. We have no doubt, therefore, of the authority of the legislature to vest the governor with power to temporarily suspend a county treasurer pending the investigation of the charges against him, of official misconduct.

It is further contended, however, that, conceding the authority of the legislature to confer upon the governor the power to suspend and remove an officer, the act in question is unconstitutional, for the reason that it does not provide for and insure to him due notice and a speedy and fair trial upon the charges preferred against him. This contention was so earnestly urged by the learned counsel for the respondent that we have examined the provisions of the act with more than usual care, in order to ascertain what foundation there is

for this adverse criticism, but we have failed to discover any that is at all substantial.

We think that any intelligent layman who might read this act, and judge it according to his natural sense of justice, would unhesitatingly conclude that it was carefully framed, so as to fully protect all the substantial rights of the officer.

Under its provisions the governor cannot move in the matter until the public examiner, who is acting under the obligation of his oath of office, has made an official report, from which it *appears* that the treasurer has been guilty of malfeasance or nonfeasance in the performance of his official duties; and then all he can do at that stage of the proceedings is to temporarily suspend the officer. The suspended officer has then thirty days within which he may notify the governor that he desires a hearing upon the charges, (those contained in the examiner's report, and which formed the basis for his suspension.) If the suspended treasurer does not within thirty days from the date of the order of suspension demand a trial, such neglect creates a vacancy in the office; that is, the suspension ripens into a removal. But it can only have this effect by the voluntary act of the officer himself, whose omission to ask for a trial amounts to an implied admission that he does not wish one. Of this he has no reason to complain, because it is the result of his own voluntary act. It is said, however, that the law makes no express provision for service of notice of the order of suspension upon the treasurer, and, as the thirty days for demanding a trial runs from the date of that order, he might be deprived of a trial altogether by notice of his suspension being withheld from him until the thirty days had expired. We think this is hardly a supposable or possible case. The order of suspension would have no effect, and would not deprive the officer of authority to perform the functions of his office, until he had notice of his suspension, either express or implied, by the appointment of a treasurer *ad interim*, and a demand by the latter upon him for possession of the office. And, if necessary for the purpose of protecting and preserving the right of an opportunity to demand a trial, we have no doubt that the " date of the order," for

the purposes of computing the thirty days, would be held to be, not the date the governor signed it, but the date that the treasurer received notice of it, express or implied.

In case a trial is demanded by the suspended treasurer, the law is especially careful to guard his rights. The governor is required in such a case to cause the charges to be reduced to writing, and furnish the treasurer with a copy of them. He is also required, *upon receipt of such notification,* (that the treasurer demands a trial,) to appoint a special commissioner to take and report testimony for and against such officer. This commissioner, before entering upon his duties, is required to take an oath to truly and fully take and record the testimony of each witness, and report the same fully and impartially to the governor within the time required of him by his appointment. He is also required to notify the treasurer of the time and place of taking such testimony. He is also authorized and required to administer to each witness the oath required in courts of record; and each witness is required to subscribe his name to his testimony when reduced to writing.

Under the provisions of 1878 G. S. ch. 73, § 1, the treasurer may obtain subpœnas to compel the attendance of witnesses in his behalf. When the testimony is taken, the governor is required to fix the time and place of hearing on the commissioner's report, and give notice thereof to the treasurer. If, on the hearing, the charges are sustained, the governor is to make an order removing the treasurer from office; but, if not sustained, then he is restored to office. What more could be provided to insure a full and fair hearing, it is difficult to conceive.

The suggestion that he has no means of speeding the trial, and that the governor might delay the hearing unduly, is without force. The same might be said of any court or other judicial tribunal. It is to be presumed that every officer will do his duty, and the possibility of his not doing so is one of the consequences of human fallibility that can never be fully guarded against or prevented.

It appears from the information that the governor was absent from the state when this order of suspension was made by him; that it was in fact made in Chicago; and it is claimed that it is therefore void,

for the reason that the governor could exercise no official authority beyond the limits of the state.

The order is attested by the secretary of state, and has the seal of the state attached, and we assume that all that is meant by the allegations of the information referred to is that the manual act of signing the order was performed by the governor in Chicago, and that it was then transmitted by him to St. Paul, and there attested, and then issued and promulgated by service on the county auditor as required by the statute.

Inasmuch, as already suggested, the order could only take effect and become operative when issued and served within the state, we do not see that it is important where the governor affixed his signature to it; or, if this was done out of the state, whether he then transmitted it to this state by mail for the purpose of being issued and served, or whether he brought the paper back personally in his pocket, and then issued it.

The demurrer is overruled, and judgment directed to be entered, ousting the respondent from possession of the office, and preventing him from the performance of its duties, in accordance with the governor's order of suspension.

An application for reargument was denied July 15, 1892.

(Opinion published 52 N. W. Rep. 655.)