STATE ex rel. WALLACE B. DOUGLAS v. PHILIP T. MEGAARDEN.[1]

December 16, 1901.

Nos. 12,897—(214).

**Removal of Sheriff from Office.**

The governor has authority to remove a sheriff from office whenever it appears to him, by competent evidence, that * * * such officer has been guilty of malfeasance or nonfeasance in the performance of his official duties, upon proceedings provided for in G. S. 1894, §§ 893–903.

**Suspension from Office.**

In the enactments referred to no provision is to be found authorizing the suspension of a sheriff pending proceedings for his removal, but that power impliedly exists as incidental to the executive authority to remove, and may be exercised by the governor in a proper case.

**Power to Suspend.**

The power to suspend an officer during investigation under the statutory provisions referred to is not arbitrary, but involves the exercise of discretion and good judgment by the governor, to be exercised when reasonable grounds shall indicate a necessity therefor.

Writ of quo warranto issued from the supreme court on the relation of the Attorney General, directed to Philip T. Megaarden, commanding him to show by what warrant he held and exercised the office of sheriff of Hennepin county. Writ of ouster granted.

*W. B. Douglas*, Attorney General, *W. J. Donahower*, Assistant Attorney General, *F. H. Boardman* and *C. L. Smith*, for relator.

*John A. Steele* and *A. Y. Merrill*, for respondent.

LOVELY, J.

Quo warranto upon the information of the attorney general in behalf of the state against Philip T. Megaarden, sheriff of Hennepin county, to oust him from the possession of that office during proceedings before the governor for his removal.

Respondent demurred to the information, which issue presents two questions: (1) Are the allegations of the information sufficient to show that the executive was authorized to order an investiga-

[1] Reported in 88 N. W. 412.

tion for the removal of the sheriff? (2) Did the order for such investigation authorize the governor to suspend the sheriff during the course of the procedure for his removal?

1. The information alleges that respondent was elected sheriff of Hennepin county at the general election of 1900; that he qualified and entered upon the office in January, 1901; that the public examiner subsequently made an examination into his official affairs for the years 1899, 1900, and 1901; that on November 25, 1901, the examiner reported to the governor that the sheriff had made improper charges against the county in excess of legal right, and had collected the same on verified claims presented to the board of county commissioners. The examiner instituted a charge, based upon his inquiry, to the effect that the sheriff was guilty of all the acts, matters, and things set out and specified in such report. The governor, on November 30, following, caused a notice to be served upon the sheriff, which is made a part of the information, and appointed three commissioners to hear evidence and report within a time fixed therein for the purpose of determining whether the sheriff should be removed from office.

It is claimed that by the statements in the report of the public examiner it does not appear that the alleged acts of malfeasance occurred during respondent's present term of office. This claim rests upon the conceded fact that there is no positive averment in the information that Megaarden was sheriff previous to January 1, 1901. It is only necessary to say with reference to this claim that the office of sheriff has long been deemed in this country so important that such officer will be recognized in all the courts of his state, and his appointment or retirement from office need not be proved. Hence this court will take judicial notice that respondent was holding such office, as the fact was, for the term previous to 1901. 1 Jones, Ev. § 109, and cases cited.

It was further insisted for respondent that a county officer cannot be investigated in removal proceedings for acts of misconduct committed previous to the term when he is holding office. We cannot hold this contention well taken in this case. Many charges by the public examiner relating to the term previous to the sheriff's incumbency, set forth in the information, are of the

same nature as one specific act occurring during his present term, and it is further stated therein that large sums of money illegally collected during the previous years are still retained by him. We have no doubt that the presentation of unfounded claims for services by a sheriff to the county board for allowance which had been collected during a previous term and retained into a succeeding one, particularly if such course of malversation had been knowingly and wilfully continued for a considerable period, as alleged in this information, would amount to official misconduct which would justify his removal from office. While we ought not to hold that the strict rules which apply to pleadings in courts of justice must prevail in removal proceedings before the governor, enough should undoubtedly be made to appear to show that the officer to be investigated has been guilty of malfeasance or non-feasance in the performance of his official duties. Without entering into details, we are satisfied from the facts set forth, the complaint of the public examiner, including the facts in his report, was sufficient to authorize the action of the executive in ordering an investigation.

2. The governor acted upon the complaint of the examiner, appointed a commission as provided in G. S. 1894, § 894, and fixed a time for the return of their report. He also made an order suspending the sheriff during the proceedings for removal, of which due notice was given, but respondent has ever since continued in possession of the office in defiance of the order of suspension. Whether he was right or wrong in this respect is the important question before us, involving the power of the governor to make the order of suspension.

No doubt such power is conferred where the proceedings are to remove a county treasurer. It is explicitly given by statute. Laws 1881, c. 108; G. S. 1894, § 904, et seq. Can it be exercised in the case of a sheriff? The answer to this question disposes of this controversy.

It was urged in behalf of the state that under Laws 1878, c. 83, § 3 (G. S. 1894, § 412) the power was conferred upon the governor to suspend a county officer upon the report of facts by the public examiner justifying that course. A careful examination of this

statute has not satisfied the court that such power is authorized therein. While it may have been thought sufficient to vest that authority in the executive, such purpose is so obscurely expressed that we prefer not to rest our conclusions upon its provisions. The importance of protecting the interests of the state in this respect will undoubtedly receive the attention it deserves from the commission for revision and the next legislature. If such power was intended in that law to apply to sheriffs, it should have been clearly expressed, and not left open to doubt.

Provisions for the removal of county officers other than treasurers are to be found in G. S. 1894, c. 9, which, excluding therefrom the provisions for the suspension and removal of county treasurers, is the law as it has been in force ever since the Revision of 1866. Chapter 9, relating to "Resignations, Vacancies, and Removals," defines how vacancies may occur; then provides the method for removal from office of certain officials (among them the sheriff) "whenever it appears * * * by competent evidence" that either of such officers has been guilty of "malfeasance or nonfeasance" in the performance of official duties, first giving to such officer a copy of the charges, and an opportunity to be heard in his defense. G. S. 1894, § 893. It further provides for the appointment of special commissioners by the governor, who shall act under oath, and proceed to take the testimony of each witness, and report the same fully and impartially within the time required by the appointment of the commission. Sections 894—896.

The course of practice thus outlined, while not as complete as it might have been made, clearly authorizes the governor to institute the proceedings for removal, and upon the report of the commission to remove or absolve the investigated official. Such proceedings are commenced upon the institution of the proceedings. They are terminated by removal of the official or dismissal of the charges against him. No right to suspend is given in express terms. If such power exists, it must be implied; hence the question still remains, can the governor, upon the ordering of the commission, suspend the officer during the investigation?

While the right to remove under the law of sister states is in many instances conferred by statutes quite similar to ours, yet the

authorities in respect to the incidental right to suspend pending the hearing are meager and unsatisfactory. We have been referred to several cases by counsel for respondent, but found them of little assistance.

The best considered case relied upon by counsel, in which it has been held that the power of suspension was not an incident to the power of removal, is Gregory v. Mayor, 113 N. Y. 416, 21 N. E. 119. In this case an officer appointed by the excise board of the city had certain supervisory duties to perform. He was suspended indefinitely, without pay, by the board which had appointed and was authorized to expel or remove him from office. This right existed without cause being shown, charges made, or any investigation therefor, thus creating by suspension an indefinite vacancy in the office, whose duties required constant and immediate service. This case is not in point here, where the temporary vacancy created by the suspension of a county officer is made, pending a hearing, which may terminate in his favor, with reinstatement to the duties and emoluments of the office. The only value of this opinion is derived from the fact that it was written by a very able jurist, who reviews the authorities, but distinguishes them from the question now presented to this court.

Most of the authorities cited for the state are either distinguishable from the case before us or go upon an assumption of the incidental right to suspend without furnishing such reasons for its existence as would render them of paramount weight on this review. The case of State v. Peterson, 50 Minn. 239, 52 N. W. 655, was on quo warranto to remove a county treasurer, conducted under Laws 1881, c. 108 (G. S. 1894, §§ 909–913), which in express terms provides for the suspension of that officer pending his removal. It was claimed for the treasurer in that case that the constitutional authority (art. 13, § 1) contained no provision for suspension; hence that suspension was not implied. The court held that this constitutional grant of power authorized the legislature to confer on the governor not only the right to remove a county treasurer, but, impliedly, the right to make an ad interim suspension of such officer; and on that ground the statute was sustained.

It is claimed for respondent that State v. Peterson, supra, is not authority in this case, for the reason that the power to suspend is not conferred on the executive by any statute as to any other county officer than treasurer. While the cases are distinguishable in the respect stated, the remarks of Justice MITCHELL in State v. Peterson, supra, criticised as obiter, were appropriate to the facts involved, and decisive of the claim that in the absence of the constitutional gift of power to suspend it might be implied, yet the reasons for the existence of such implied power, as well as the references and quotations, are of weight in disposing of the question now first raised in this court, viz., whether, in the absence of express authority in a statute, it may be held that the power to suspend is an incident of the unquestioned power to remove. A more liberal rule of construction applies to the constitution than to statutes. The latter must be more strictly construed; and we are inclined to allow full weight to the distinction made by the respondent in this respect which narrows the issue to the question whether, under the rules of construction applicable to statutes distinctively, the right to suspend during proceedings for removal, though unexpressed in the statute, is incidental.

In the Peterson case the court referred to the only precedent we have found directly in point on this question, viz., State v. Police, 16 Mo. App. 48, 50. This court in the Peterson case quoted therefrom with respect language of such importance to the question here involved that we take the liberty of reproducing it on account of its practical suggestive force. Premising that in the Missouri case the right to suspend the official depended upon a power conferred solely by statute, that court said: "The suspension of an officer, pending his trial, for misconduct, so as to tie his hands for the time being, seems to be universally accepted as a fair, salutary, and often necessary incident of the situation. His retention, at such time, of all the advantages and opportunities afforded by official position may enable and encourage him not only to persist in the rebellious practice complained of, but also to seriously embarrass his triors in their approaches to the ends of justice. In the absence of any express limitation to the contrary,—and none has been shown,—we are of opinion that in cases where guiltiness

of the offense charged will involve a dismissal from office there is, on general principles, no arbitrary or improper exercise of a supervisory authority in a suspension of the accused pending his trial in due and proper form."

The reasons stated in the above case for holding that the right of suspension during proceedings for removal seem to be so essential to a complete and thorough investigation of an official charged with misconduct as to furnish an unanswerable argument to the claim of respondent that the minor right to suspend is not included in the major authority to remove.

A better illustration of the necessity of holding that such incidental right exists cannot be made than in the case of an investigated sheriff, who as executive officer of the county enjoys great influence, which might readily extend to the control of papers absolutely necessary to determine the matters under investigation. He might, if so disposed, prevent the use of other evidence necessary to a full and a fair hearing of the charges against him. If the alleged acts of misconduct were, as they might supposedly be, made the grounds of inquest by the grand jury upon which further proceedings would depend, it is easy to see how he would have a deep interest in withholding or permitting use of means that would result in just and effectual prosecution; and, if he might hold the office until removed by the governor, a trial of an indictment against him might be made useless in various ways by the exercise of his power and influence in the court where such trial would be conducted, as well as in the investigation by the commissioners. It may be said that it is a great hardship to an accused official to be deprived of his fees and emoluments before actual removal; but the answer to this suggestion is that he takes the office and retains it cum onere, and must accept its burdens with its benefits.

It ought not, therefore, to be held that the unquestionable power to remove should be so handicapped by an interpretation of the statute as to defeat the very object it seeks to attain. Presumably the chief executive of the state will act upon an exalted sense of justice and high considerations of duty, and only in cases where strong reasons exist for exercising the power of suspension will impose unnecessary burdens upon the accused official after a suf-

ficient review of the reasons upon which that power is to be exercised.

The order to suspend should not prejudice the respondent in any way. He is entitled to a fair hearing, with all the presumptions of innocence and good intentions in his favor. These ought to continue until the termination of the investigation and the final action of the governor, but we are compelled to adopt the view that, to give the power of removal practical effect, it must be left to executive discretion and judgment to direct a temporary suspension of the official, as ordered in this case.

Let the writ of ouster issue as prayed for.