STATE EX REL. GUS H. CARLSON AND OTHERS v.
WILLIAM L. STRUNK AND OTHERS.
CHESTER S. WILSON AND OTHERS, APPELLANTS.[1]

April 20, 1945.

Nos. 33,834, 33,960.

[1]Reported in 18 N. W. (2d) 457.

*J. A. A. Burnquist,* Attorney General, *Charles E. Houston,* Assistant Attorney General, *Mandt Torrison,* Special Assistant Attorney General, and *C. D. O'Brien, III,* Special Counsel, for appellants.

*Frank H. Osterlind* and *David J. Erickson,* for petitioners-respondents.

LORING, CHIEF JUSTICE.

Two appeals are here for decision. One is from a judgment for a peremptory writ of *mandamus* directing certain state officers to restore to the state payroll for certain periods the petitioners-respondents and to make back salary payments to them. The petitioners-respondents had been game wardens in the employ of the division of game and fish in the conservation department but had been discharged. The other appeal is by the present conservation department officers from an order substituting them for the state officers in office during the periods for which restoration to the payroll was ordered. The two appeals have been consolidated for hearing.

The controversy here under consideration arose out of the suspension of Herman C. Wenzel as commissioner of conservation on April 26, 1939. He was then under charges which were subsequently found to be true, and he was removed January 6, 1940. From the time of his suspension he ceased to perform the duties of his office, and on the day he was suspended the governor ap-

pointed Lester R. Badger as acting commissioner of conservation. He at once entered upon the office and performed the duties of commissioner but failed to file an oath. June 6, 1939, Badger removed Guy W. Cravens, the then deputy commissioner of conservation; Harry E. Speakes, director of the division of game and fish; and Edward McKeever, the deputy director of that division. On the same day, he appointed Louis H. Merrill director of the division of game and fish. Merrill on the same day appointed E. R. Starkweather deputy director of that division. July 14, 1939, the governor appointed Merrill as acting commissioner, and he immediately entered upon the duties of that office but did not file his oath until August. July 19, 1939, Starkweather, with Merrill's approval, discharged from the state service 20 game wardens, including the petitioners herein, as of July 31, 1939.

The principal question presented by this appeal is whether or not the appointment of Badger as acting commissioner and his appointment of Merrill and Merrill's appointment of Starkweather were effective to constitute them officers, either *de jure* or *de facto,* so that as such the act of Starkweather in discharging the game wardens was effective in severing them from the state service.

Respondents place their chief reliance upon L. 1937, c. 310, § 3(h), which provides:

"In case of a vacancy in the office of Commissioner, or any Director, his deputy shall serve in his place and exercise all the powers and perform all the duties thereof until a successor is regularly appointed and qualified, excepting that such acting commissioner, or director, shall have no power to appoint another deputy nor to appoint any director nor to revise or change the assignments of activities among the several divisions of the Department."

They contend that the foregoing statute deprived the governor of authority to appoint an acting commissioner during Wenzel's suspension and that consequently Badger was a mere usurper and without power or authority to appoint Merrill, who was, in turn,

a usurper and wholly without power to appoint Starkweather, who thus also became a usurper.

◼ Absent the quoted statute, there can be no question that the governor possessed the right to appoint an acting commissioner to serve during Wenzel's suspension. The power to suspend was incident to the power to remove, which the governor had under L. 1937, c. 310, § 1(c). In State ex rel. Clapp v. Peterson, 50 Minn. 239, 244, 52 N. W. 655, this court, speaking through Mr. Justice Mitchell, said:

"Article 13 of the constitution, after providing in section 1 for the removal of state officers and judges of the supreme and district courts by impeachment, then provides in section 2 that 'the legislature of the state may provide for the removal of inferior officers from office for malfeasance or nonfeasance in the performance of their duties.'

"The power thus conferred is plenary, and confers authority upon the legislature to vest the power of removal, and the determination of the question whether cause for removal exists, in any department of the government, or in any officer or official body, it may deem expedient. * * *

"But, says respondent, authority to provide for the removal does not carry with it the power to provide for the suspension of an officer. Whether the power to suspend is included generally in the power to remove, so that the former may be exercised independently of the latter, we need not consider. But we are very clear that the power of temporary suspension, so far as necessary and ancillary to the power to remove, is included in the latter. This is under the familiar doctrine of implication, that, where a constitution gives a general power or enjoins a duty, it also gives by implication every particular power necessary for the exercise of the one or the performance of the other. Cooley, Const. Lim. 78.

"As is well said in State v. Police Com'rs, 16 Mo. App. 48, 50: 'The suspension of an officer pending his trial for misconduct, so far as to tie his hands for the time being, seems to be universally accepted as a fair, salutary, and often necessary incident of the

situation. His retention at such a time of all the advantages and opportunities afforded by official position may enable and encourage him, not only to persist in the rebellious practices complained of, but also to seriously embarrass his triers in their approaches to the ends of justice.' * * *

"The safety of the state, which is the highest law, imperatively requires the suspension, pending his trial, of a public officer,—especially a custodian of public funds,—charged with malfeasance or nonfeasance in office. *Suspension does not remove the officer, but merely prevents him, for the time being, from performing the functions of his office;* and from the very necessities of the case must precede a trial or hearing." (Italics supplied.)

The duty to appoint an acting commissioner devolved upon the governor as soon as he suspended Wenzel. Martin v. County of Dodge, 146 Minn. 129, 132, 178 N. W. 167, 168, where this court, speaking through Mr. Justice Dibell, said:

"Upon the suspension of Judge Martin some one had to discharge the duties of the office. It could not be vacant. The duty of appointment devolved upon the Governor. Judge Cooper upon his appointment was not an intruder, but held his office as of right. The removal was made with jurisdiction. In the interim Judge Cooper was the rightful probate judge. He was in office because rightfully put there by the Governor's appointment."

■ Did the legislature, by the quoted statute, intend to deprive the governor of his power to appoint an acting commissioner to serve during the suspension? The answer lies in the clear distinction between the situation created by a suspension and that created by the occurrence of a vacancy. Suspension becomes imperative pending the trial of a public officer for malfeasance or nonfeasance in office. A vacancy does not occur until the officer is removed following trial or is occasioned by some other event.

A suspension does not create a vacancy or remove an officer, "but merely prevents him, for the time being, from performing the functions of his office." State ex rel. Clapp v. Peterson, 50 Minn.

239, 245, 52 N. W. 655, 656. Here, the statute applies by its terms only to *vacancies* occurring in the office of commissioner or director and until a successor "is regularly appointed." It seems clear that it was intended to apply only in the interregnum between the occurrence of an actual vacancy and the exercise of the appointing power to fill such vacancy. We discover no purpose to restrain the normal powers of the governor as they existed when the statute was enacted. As we see it, the purpose was to provide an officer to perform the routine duties of the commissioner until the vacancy was filled by the governor. The restrictions on the deputy's powers when acting under the statute lend support to this interpretation. The statute has no application to the situation created by Wenzel's suspension. His deputy did not become acting commissioner by reason of the suspension. Only an actual vacancy could accomplish that. Upon the suspension, it immediately became the duty of the governor to appoint an acting commissioner to perform the duties of the office. He would have been remiss in his responsibilities had he not done so. Martin v. County of Dodge, 146 Minn. 129, 178 N. W. 167, *supra*.

■ Whether Badger acted as a qualified *de jure* appointee or, because he failed to file his oath, merely as a *de facto* officer is immaterial. De Jan v. De Jan (5 Cir.) (1927) 18 F. (2d) 690. He acted not as a usurper, but under the appointment of the governor, who had authority to appoint, and he assumed the office and performed its duties. He became at least a *de facto* officer. Fulton v. Town of Andrea, 70 Minn. 445, 449, 73 N. W. 256, 257; State v. Carroll, 38 Conn. 449, 9 Am. R. 409.

■ A *de facto* officer may make valid appointments of subordinates. Brinkerhoff v. Jersey City, 64 N. J. L. 225, 46 A. 170; People ex rel. Norfleet v. Staton, 73 N. C. 546, 21 Am. R. 479; State ex rel. Johnston v. Badger, 90 Mo. App. 183, 188; State ex rel. Hartnett v. Powell, 101 Iowa 382, 70 N. W. 592; Roberts v. Holmes, 54 N. H. 560; Brady ex rel. v. Howe, 50 Miss. 607.

■ Badger's authority to act is not invoked in his own behalf but in behalf of the interests of the state. It could only be prop-

erly questioned in a direct proceeding by writ of *quo warranto.* Martin v. Common School Dist. 163 Minn. 427, 430, 204 N. W. 320, 321; Burt v. Winona & St. P. R. Co. 31 Minn. 472, 475, 478, 18 N. W. 285, 286, 288; State ex rel. Addison v. Williams, 25 Minn. 340, 343; State v. Brown, 12 Minn. 448 (538). The title to the office could not be collaterally attacked in a *mandamus* proceeding. Burke v. Leland, 51 Minn. 355, 357, 53 N. W. 716, 717.

■ Before August 1, 1939, the respondents could be removed "at the will and pleasure" of the appointing authority. L. 1939, c. 441, § 10(3).

The conclusions we draw from the foregoing principles are that Badger was at least acting commissioner *de facto;* that in any event his title to the office cannot be challenged in this proceeding; that Badger's appointment of Merrill would have made Merrill a director of the division of game and fish *de jure* had he properly qualified, but did at least make him an officer *de facto;* that Merrill's appointment of Starkweather was valid and vested in him full powers and authority prior to August 1, 1939, to discharge the game wardens as he did. These conclusions dispose of the case.

The disposition of the appeal from the judgment requires a reversal of the order of substitution. It is so ordered.

·The judgment for the peremptory writ of *mandamus* is reversed and the writ discharged with directions to enter judgment for appellants.

Reversed.

Mr. Justice Thomas Gallagher took no part in the consideration or decision of this case.