HENRY JAMES, JR. v. JAMES B. HUNT, JR.

No. 7826SC930

(Filed 2 October 1979)

1. Declaratory Judgment Act § 4.2— removal of Cemetery Commission member — applicability of Administrative Procedure Act — authority to suspend — availability of declaratory judgment

   A declaratory judgment action was appropriate to obtain a determination as to whether the Governor is required to follow the Administrative Procedure Act in removing for cause a member of the N. C. Cemetery Commission and whether the Governor has authority to suspend the Cemetery Commission member pending a hearing on his removal.

2. Public Officers § 12— removal of Cemetery Commission member — inapplicability of Administrative Procedure Act — power to suspend pending hearing

   The Administrative Procedure Act is not applicable to the Governor's removal for cause of a member of the N. C. Cemetery Commission, and the Governor has the authority to suspend the Cemetery Commission member pending a hearing on his removal. G.S. 65-50; G.S. 143B-13(d).

APPEAL by plaintiff from *Ervin, Judge.* Judgment entered 26 June 1978, Mecklenburg Superior Court. Heard in the Court of Appeals 13 June 1979.

In 1976 plaintiff was appointed by Governor James E. Holshouser, Jr., as a member of the North Carolina Cemetery Commission for a term expiring 30 June 1980. On 13 February 1978, defendant, James B. Hunt, Jr., Governor of North Carolina, wrote to plaintiff requesting plaintiff's resignation as a public member of the North Carolina Cemetery Commission because plaintiff's "legal representation of thirteen cemeteries and

Cemetery Funds of North Carolina, Inc. erodes the public's confidence in the ability of the Cemetery Commission to represent the people in matters which the Commission considers". By letter dated 17 February 1978, directed to Governor Hunt, plaintiff refused to resign and gave his reasons for the refusal. On 8 March 1978, Governor Hunt wrote to plaintiff enumerating seven matters and instances, any one of which would, according to defendant, warrant plaintiff's removal from the Commission. He informed plaintiff that he could secure a public hearing by requesting such a hearing in writing within 10 days of receipt of the letter, and plaintiff was further informed that he was suspended from the Commission pending final determination of the matter.

On 9 March 1978, plaintiff, through counsel and in writing, demanded a hearing "in accordance with the provisions of N.C.G.S. 150A-1 *et seq.*" The letter advised that plaintiff intended to proceed with immediate discovery including adverse examination of defendant, suggested that the hearing officer should not be an appointee of defendant or have any connection with defendant "in any significant way", suggested that the defendant have no *ex parte* communication with the hearing officer, and advised that plaintiff would not recognize that portion of defendant's letter suspending plaintiff. On 14 March 1978, the Attorney General, through an Associate Attorney General, advised the Cemetery Commission as follows:

"(1) The Governor has the power to remove an appointee to an independent administrative board, who was appointed by a governor for a definite term, when the Governor has 'cause' to do so;

(2) The definition of 'cause' is to be determined by the Governor in the first instance;

(3) Removal of the board member can be accomplished by executive order or by letter;

(4) The Governor must afford the appointee an opportunity for procedural due process by giving the appointee an opportunity for a hearing prior to final removal at which the appointee may contest the determination of the facts giving rise to 'cause';

(5) Pending a hearing and until the matter is finally resolved, the Governor can suspend the appointee from the board;

(6) The Attorney General, upon request of the Governor, presents the evidence against the appointee at the 'cause' hearing."

By letter dated 14 March 1978, plaintiff, through counsel, wrote to the Chairman of the Commission advising him that he had suggested to defendant's legal counsel that defendant furnish plaintiff with any authority he had for the suspension of plaintiff but none had been received, that the opinion of the Attorney General did not have the force and effect of law, and requesting that the Chairman "simply ignore the inappropriate statements of Mr. Hunt and any subsequent unauthorized and nonsupportable edicts from the Attorney General". On 15 March 1978, the Chairman of the Commission issued a statement recognizing the suspension as proper on the advice of the Attorney General and further "[i]f Mr. James desires to contest the Governor's authority to suspend him from the Commission, that matter should be taken up with the Governor or the Attorney General."

On 28 March 1978, defendant, through counsel, notified plaintiff's counsel that a hearing would be held before Zia C. Schostal, a hearing officer of the North Carolina Personnel Commission at 10:00 a.m. on 12 April 1978 in Room 213, Dobbs Building, Raleigh. The letter further advised that the hearing officer would preside over the hearing and see that a transcript of the hearing was prepared and forwarded to defendant "for his decision in this matter". Defendant advised that he had determined that the Administrative Procedure Act "is not appropriate in this action" and that "the issues for the hearing will be those seven items outlined in Governor Hunt's March 8, 1978 letter to Mr. James. Those issues will be presented at the April 12 hearing by Deputy Attorney General Millard R. Rich, Jr. You may present a brief at the hearing or you may file a brief with Governor Hunt after the hearing." The hearing was later rescheduled for 10 May 1978.

On 8 May 1978, plaintiff instituted this action seeking, among other things (1) an order restraining the defendant and the hearing officer from conducting the hearing scheduled for 10 May; (2) a declaratory judgment that defendant has no power under G.S. 65-50 to suspend plaintiff from the Commission; (3) a declaratory

judgment that prior to plaintiff's removal from office he is entitled to a hearing and other procedural due process protections enumerated in the Administrative Procedure Act; and (4) an order directing defendant to reinstate plaintiff pending a decision by a hearing officer appointed pursuant to the Administrative Procedure Act.

The request for a restraining order was rendered moot by the voluntary cancellation of the hearing pending further decisions of the court.

Defendant filed answer in which he admitted that the State Personnel System Act is not applicable; that plaintiff is not an employee of the State as a member of the Commission, receives no salary, but is compensated on a per diem basis; that defendant had restricted the hearing officer's authority to the taking of evidence which would then be presented to defendant for his decision regarding plaintiff's removal from office; that the Administrative Procedure Act applies to agency decisions but averred that it does not apply to discretionary acts of the Governor because of constitutional separation of powers; that he is an officer of the State but averred that "as a constitutional officer vested with the executive power of the State, his discretionary decisions are not subject to definition as an 'agency decision' within the meaning of G.S. 150A-2." He denied that he had refused plaintiff a hearing before an impartial hearing officer; that the procedural rules established by him would not afford plaintiff the due process protection of the Administrative Procedure Act; that his "suspension and/or removal of plaintiff" from the Commission is an agency decision under the Administrative Procedure Act; that plaintiff is entitled to a hearing under the provisions of that Act; that he had no power to suspend plaintiff; and that the hearing officer is an appointee of defendant, averring that she is a registered Republican employed by Governor Holshouser and, as the most experienced hearing officer in the State, was selected because of her expertise.

As additional defenses the defendant averred that the court lacked jurisdiction because, since the matter involves a political question concerning a discretionary decision by the Governor of the State, the submission of the matter for judicial review at this point encroaches upon the doctrine of separation of powers, and

that the Governor has given plaintiff notice that he is entitled to a hearing on the merits and until that is done and a decision rendered, judicial review is premature. As a counterclaim, defendant alleged that he has the power and authority under G.S. 65-50 and 143B-13 to remove plaintiff permanently from his appointed position; that "prior to permanent removal, the Governor must give the plaintiff notice and an opportunity for a hearing which comports with procedural due process", but "is not bound by the provisions of the Administrative Procedure Act"; and that, incident to the power of removal, defendant has the power and authority to suspend plaintiff pending determination on the merits.

Defendant asked for dismissal of the complaint or, in the alternative, a judgment declaring that the defendant has the power to suspend plaintiff and that the Administrative Procedure Act does not apply to a hearing concerning the Governor's removal of the plaintiff from his appointive position on the Cemetery Commission.

The matter was heard on the pleadings and exhibits introduced by plaintiff (the letters detailed above). The court found facts, and no exception has been taken to those findings. On the facts found, the court concluded:

"3. The issues addressed to this Court in this action are not 'ripe' for judicial review at this time. Declaratory relief should not be given by this Court regarding an ongoing administrative process. Until the Defendant Governor has made his final decision after a hearing on the merits, this matter does not present a justiciable 'case or controversy' within the purview of Article 26 of Chapter 1 of the General Statutes of North Carolina. The appropriate time and forum for review of this administrative decision is on judicial review after a hearing on the merits wherein the issues are crystallized and developed. Therefore, the case at bar is not 'ripe' for judicial scrutiny at this time, and the action should be dismissed pursuant to Rule 12(b)(6) and 12(b)(1) of the Rules of Civil Procedure and G.S. § 1-257.

Although the foregoing is dispositive of the Plaintiff's Complaint and the Defendant's Counterclaims, having heard the

evidence and arguments of counsel on the merits, this Court further concludes as a matter of law;

4. The defendant Governor has the authority to suspend the Plaintiff for a reasonable period of time pending a hearing on the merits regarding Plaintiff's removal for cause. This power to suspend is incident to the Defendant's power to remove a Cemetery Commissioner for misfeasance, malfeasance, and nonfeasance pursuant to G.S. § 65-50 and G.S. § 143B-13. This suspension power is necessary to protect the welfare of the citizens of North Carolina. This power is analogous to the provision allowing summary suspensions of an occupational license pending a revocation hearing on the merits when a licensing agency finds that the public health, safety, or welfare requires such action under G.S. § 150A-3(c). If, in the interest of public welfare, summary suspension is authorized in a situation where an individual can lose his livelihood, then *a fortiori*, this Court is persuaded that the Governor's suspension of the Plaintiff should be upheld when the Plaintiff loses only the prestige of sitting on the Cemetery Commission and participating in the conduct of Commission business;

5. The Administrative Procedure Act does not apply to extraordinary matters entrusted to the sole discretion of the Defendant acting in his individual capacity as Governor and Chief Executive pursuant to a clear statutory command to exercise his individual judgment. The provisions of G.S. § 65-50 and G.S. § 143-13, regarding removal of Cemetery Commissioners, falls within this category of decisions. After a hearing on the merits, the courts, upon judicial review, will have the opportunity to scrutinize the record of the proceedings to determine whether the hearing afforded the Plaintiff comports with the constitutional due process requirements guaranteed the Plaintiff by the North Carolina and United States Constitutions.",

and dismissed the action for lack of a "ripe" justiciable "case or controversy". Plaintiff appealed, excepting to the above conclusions of law and assigning them as error.

*Attorney General Edmisten, by Assistant Attorney General Thomas F. Moffitt, for defendant appellee.*

*James, McElroy & Diehl, by William K. Diehl, Jr., and Allen J. Peterson, for plaintiff appellant.*

MORRIS, Chief Judge.

The trial judge held that until the defendant has made his final decision after a hearing on the merits, no justiciable "case or controversy" exists and that, therefore, the case is not "ripe" for judicial scrutiny at this time. We disagree. Plaintiff's complaint raises two questions: Whether the Administrative Procedure Act (G.S. 150A-1 *et seq.*) is applicable and must be followed in the removal proceedings initiated by defendant and whether defendant has the authority to suspend plaintiff pending a hearing on the merits.

It is true that plaintiff is entitled to a hearing. This is conceded by defendant and affirmatively averred in his counterclaim. After such a factual hearing is held, appeal may be had from the determination resulting therefrom. Plaintiff does not seek, in this action, to have any *factual* controversy settled. The question of whether the facts constitute cause for removal is not now before us. The only issues sought to be determined are questions of law.

The Declaratory Judgment Act (G.S., Chapter 1, Art. 26) provides that courts shall have the power to "declare rights, status, and other legal relations" regardless of whether "further relief is or could be claimed.". G.S 1-253.

By G.S. 1-254 provision is made for any person interested "under a deed, will, written contract or other writings constituting a contract" or whose rights may be affected by a stattute, ordinance, contract, or franchise to have determined "any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise . . ." and G.S. 1-255 sets out those who may apply for a declaration of rights or legal relations with respect to trusts or estates of decedents, infants, lunatics, or insolvents. However, G.S. 1-256 specifically provides that "[t]he enumeration in §§ 1-254 and 1-255 does not limit or restrict the exercise of the general powers conferred in § 1-253 in any proceedings where declaratory relief is sought, in which a

judgment or decree will terminate the controversy *or remove an uncertainty*" (emphasis supplied) and G.S. 1-264 declares that the Declaratory Judgment Act is intended to be remedial, that "its purpose is to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations, and it is to be liberally construed and administered".

> "The courts have on numerous occasions stated that the Uniform Declaratory Judgment Act furnishes a particularly appropriate method for determination of controversies relative to the construction and validity of a statute, provided there is an actual or justiciable controversy between the parties in respect to their rights under the statute. (Citations omitted.)" *Woodard v. Carteret County*, 270 N.C. 55, 59-60, 153 S.E. 2d 809, 812 (1967).

[1] Here plaintiff alleges that defendant must follow the procedure set out in the Administrative Procedure Act. (Chapter 150A, General Statutes of North Carolina.) Defendant maintains this statute should be construed as having no application under these circumstances. Plaintiff urges that defendant has no authority to suspend him pending final determination on the merits. Defendant, on the other hand, urges a construction of the statutes, G.S. 65-50 and G.S. 143B-13(d), to allow for suspension.

We think this is clearly an appropriate case for declaratory judgment. *See Jernigan v. State*, 279 N.C. 556, 184 S.E. 2d 259 (1971).

[2] We now discuss the problem of whether, in removing plaintiff, the defendant must follow the procedure set up in the Administrative Procedure Act.

Article 9, Chapter 65 of the General Statutes of North Carolina, is entitled "North Carolina Cemetery Act". That Act establishes "in the Department of Commerce a North Carolina Cemetery Commission with the power and duty to adopt rules and regulations to be followed in the enforcement of this Article." G.S. 65-49. The Governor is given the power to appoint the seven members of the Commission (for fixed terms with staggered expiration dates), and is also given "the power to remove any member of the Commission from office for misfeasance,

James v. Hunt

malfeasance, and nonfeasance according to the provisions of G.S. 143B-13 of the Executive Organization Act of 1973". G.S. 65-50.

Section 13 of Chapter 143B (Executive Organization Act of 1973) is entitled "Appointment, qualifications, terms, and removal of members of commissions". It provides that commission members must be residents of the State, establishes criteria for the use of the Governor in selecting appointees, sets out the events the happening of which would create a vacancy in a commission membership, delineates proscribed political activities, and specifically provides: "In addition to the foregoing, any member of a commission may be removed from office by the Governor for misfeasance, malfeasance, and nonfeasance." G.S. 143B-13(d).

It is clear from the statutory provisions that members of the Commission are not removable at the pleasure of the Governor, nor does defendant so contend. Indeed the statutory provisions specifically provide that the removal must be for cause. This is entirely necessary, given the duties and purpose of the Commission. It is charged "with the power and duty to adopt rules and regulations to be followed in the enforcement" of the North Carolina Cemeteries Act, including the licensing of cemeteries operating in this State. It must act with entire impartiality. The duties of the Commission are neither political nor executive. They are predominantly quasi-judicial and quasi-legislative. Its members are required to exercise the judgment of experts in the field "appointed by law and informed by experience". *Illinois Central Railroad Co. v. Interstate Commerce Commission*, 206 U.S. 441, 454, 51 L.Ed. 1128, 1134, 27 S.Ct. 700, 704 (1907).

The question of removal of appointees by the Chief Executive Officer of the United States has often been discussed and reference is frequently made to a trilogy of cases in which the problem is discussed in much detail. *See Myers v. United States*, 272 U.S. 52, 71 L.Ed. 160, 47 S.Ct. 21 (1926); *Humphrey's Executor v. United States*, 295 U.S. 602, 79 L.Ed. 1611, 55 S.Ct. 869 (1935); and *Wiener v. United States*, 357 U.S. 349, 2 L.Ed. 2d 1377, 78 S.Ct. 1275 (1958). In *Humphrey*, the Court considered whether President Roosevelt had the power to remove a member of the Federal Trade Commission because he felt that the aim of his administration with respect to the work of the Commission could best be carried out with personnel of his own choosing despite

the provision in the Federal Trade Commission Act that "[a]ny Commissioner may be removed by the President for inefficiency, neglect of duty, or malfeasance in office." 295 U.S. at 620, 79 L.Ed. at 1614, 55 S.Ct. at 870. The Court, in holding that removal by the President could only be for cause, said:

> "The authority of Congress, in creating quasi-legislative or quasi-judicial agencies, to require them to act in discharge of their duties independently of executive control, cannot well be doubted; and that authority includes, as an appropriate incident, power to fix the period during which they shall continue, and to forbid their removal except for cause in the meantime. For it is quite evident that one who holds his office only during the pleasure of another cannot be depended upon to maintain an attitude of independence against the latter's will.
>
> The fundamental necessity of maintaining each of the three general departments of government entirely free from the control or coercive influence, direct or indirect, of either of the others, has often been stressed and is hardly open to serious question. So much is implied in the very fact of the separation of the powers of these departments by the Constitution, and in the rule which recognizes their essential coequality. The sound application of a principle that makes one master in his own house precludes him from imposing his control in the house of another who is master there. James Wilson, one of the framers of the Constitution and a former justice of this court, said that the independence of each department required that its proceedings 'should be free from the remotest influence, direct or indirect, of either of the other two powers.' Andrews, The Works of James Wilson (1896) vol. 1, p. 367 and Mr. Justice Story, in the first volume of his work on the Constitution, 4th ed. § 530, citing No. 48 of the Federalist, said that neither of the departments in reference to each other 'ought to possess, directly or indirectly, an overruling influence in the administration of their respective powers.' And see *O'Donoghue v. United States*, supra (289 U.S. 530, 531, 77 L.Ed. 1361, 1362, 53 S.Ct. 740).
>
> The power of removal here claimed for the President falls within this principle, since its coercive influence threatens the independence of a commission, which is not only wholly

disconnected from the executive department, but which, as already fully appears, was created by Congress as a means of carrying into operation legislative and judicial powers, and as an agency of the legislative and judicial departments." 295 U.S. at 629-30, 79 L.Ed. at 1619-20, 55 S.Ct. at 874-75.

Our Court, in 1897, in holding that the Governor had the right to suspend a member of the Railroad Commission of North Carolina, said:

> "We realize the responsibilities of this Court in settling the line of demarkation between the legislative, executive and supreme judicial powers, which, by constitutional obligation, must be kept forever separate and distinct. This vital line must be drawn by us alone, and we will endeavor to draw it with a firm and even hand, free alike from the palsied touch of interest and subserviency and the itching grasp of power. Should the legislative or executive departments of the State cross that line we will put them back where they belong; but upon us rests the equal obligation of keeping upon our own side. This is a question not of discretion, but of law; a matter not of expediency, but of right.
>
> . . .
>
> Upon the foregoing authorities we are of opinion that the disputed provisions of the act are constitutional and that the power of suspension rests in the hands of the Governor, which, when exercised in an orderly manner, is not reviewable by the courts. Whether the action of the Governor was justified by the facts, which he alone could find, is not for us to say." *State ex rel. Caldwell v. Wilson,* 121 N.C. 425, 471-72, 28 S.E. 554, 562 (1897).

The statutory authority of defendant to remove appointees to the Cemetery Commission for cause is not objectionable as constituting a delegation of legislative or judicial power to the executive branch of government. *State v. Morton,* 140 W.Va. 207, 84 S.E. 2d 791 (1954). *See generally* 38 Am. Jur. 2d, *Governor,* § 8 (1968).

A case strikingly similar to the case before us is *Hall v. Tirey,* --- Okl. ---, 501 P. 2d 496 (1972). A member of the State Board for Property and Casualty Rates brought an action to review the Governor's action in removing him from office. The

trial court held that the record before the hearing examiner did not contain sufficient evidence to justify removal. On the Governor's appeal, the Supreme Court held that the proper procedure for the appointee to obtain review of the Governor's action was by petition for writ of mandamus in the trial court to require the State's payroll officer to pay the compensation the appointee claimed. The Governor had notified the appointee that he could request a hearing and suspended him pending final determination of the matter. The appointee challenged the Governor's power to suspend him and refused to obey the executive order. The Governor appointed a hearing examiner whose function was to conduct the presentation of evidence but not to make a decision or find facts. A transcript was prepared for the Governor who entered a final order of removal. The order contained findings of fact and conclusions of law. The Court, after holding that the Governor had the power to suspend and remove, noted that the appointee claimed that his removal was subject to judicial review under the Administrative Procedure Act. The Court adopted the rationale of Humphrey's Executor in holding that judicial review was appropriate but held that the Administrative Procedure Act did not apply to removals by the Governor.

We think this is a logical conclusion. The early opinions in other states indicate that the propriety of a Governor's exercise of his power of removal was not reviewable at all. See Annot., 52 A.L.R. 7 (1928) and Annot., 92 A.L.R. 998 (1934). In recent years, courts have shown an increased willingness to review. See Humphrey's Executor, Weiner, and Hall, supra. However, we find no case nor indication by any court that the courts should bind the Governor to any statutory procedure unless the Constitution of the State or the statutory provisions giving him the power of removal specify a specific procedure therefor. Here, G.S. 65-50 gives the Governor the power to remove a member of the Cemetery Commission for cause "according to the provisions of G.S. 143B-13 of the Executive Organization Act of 1973". There is no reference to the Administrative Procedure Act. Nor does G.S. 143B-13(d), which gives the Governor power to remove for cause any member of a commission, refer to the Administrative Procedure Act. Had the General Assembly intended for the Governor to be bound by the provisions of the Administrative Procedure Act, it could have referred to that Act rather than the Executive

Organizations Act. Absent a specific legislative enactment requiring removals by the Governor to be subject to the Administrative Procedure Act, we do not believe the Act is applicable to removals by the Governor, and we so hold.

[2]   We turn now to appellant's contention that the Governor had no power or authority to suspend him. It is true that the statutes giving the Governor the power of removal do not specifically include the power of suspension. However, the suspension of public officers pending a removal for cause seems to be fair and it is quite often essential. Although there is some authority contra [*see, e.g., Cull v. Wheltle*, 114 Md. 58, 79 Atl. 820 (1910) and *Gregory v. Mayor of the City of New York*, 113 N.Y. 416, 21 N.E. 119 (1889)], "[t]he power to suspend is generally considered as included in the power of removal for cause, since a suspension is merely a less severe disciplinary measure". 63 Am. Jur. 2d, *Public Officers and Employees*, § 256 (1972). In *State ex rel. Carlson v. Strunk*, 219 Minn. 529, 18 N.W. 2d 457 (1945), the Governor had suspended and removed one Wenzel as Commissioner of Conservation, under a statute giving him the power to remove, and had appointed an acting commissioner on the day Wenzel was suspended. The Court upheld the suspension and quoted with approval from *State ex rel. Clapp v. Peterson*, 50 Minn. 239, 244, 52 N.W. 655, 655-56 (1892), where the Court said:

> "Whether the power to suspend is included generally in the power to remove, so that the former may be exercised independently of the latter, we need not consider. But we are very clear that the power of temporary suspension, so far as necessary and ancillary to the power to remove, is included in the latter. This is under the familiar doctrine of implication, that, where a constitution gives a general power or enjoins a duty, it also gives by implication every particular power necessary for the exercise of the one or the performance of the other. Cooley, Const. Lim. 78.
>
> 'As is well said in *State v. Police Com'rs*, 16 Mo. App. [48] 50: "The suspension of an officer pending his trial for misconduct, so far as to tie his hands for the time being, seems to be universally accepted as a fair, salutary, and often necessary incident of the situation. His retention at such a time of all the advantages and opportunities afforded by of-

ficial position may enable and encourage him, not only to persist in the rebellious practices complained of, but also to seriously embarrass his triers in their approaches to the ends of justice." * * *

'The safety of the state, which is the highest law, imperatively requires the suspension, pending his trial, of a public officer,—especially a custodian of public funds,—charged with malfeasance or nonfeasance in office. *Suspension does not remove the officer, but merely prevents him, for the time being, from performing the functions of his office;* and from the very necessities of the case must precede a trial or hearing.' (Italics supplied.)" 219 Minn. at 532-33, 18 N.W. 2d at 459.

Accord: *Burnap v. United States*, 252 U.S. 512, 64 L.Ed. 692, 40 S.Ct. 374 (1920); *State ex rel. Thompson v. Seigler*, 230 S.C. 115, 94 S.E. 2d 231 (1956). *See also Caldwell v. Wilson*, supra. The view above expressed appears to us to be by far the better reasoned view. We, therefore, hold that the Governor did not exceed his power and authority when he suspended appellant.

We do not discuss the cause for the suspension and removal. That is not before us. We merely hold that the Governor has the power to suspend and remove for cause and that the Administrative Procedure Act has no applicability to the Governor's removal for cause.

The trial court correctly dismissed the action but the matter is remanded for the entry of judgment in conformity with this opinion.

Judges PARKER and MARTIN (Harry C.) concur.