## ELLIOTT and another vs. ESPENHAIN and another.

*December 14, 1883 — January 8, 1884.*

PRACTICE. *(1) Right of party not served to appear and answer.*
SALE OF CHATTELS. *(2) Partial delivery: Waiver.*

1. In an action against E. and B. for goods sold and delivered to them as partners, B. only was served with process, and answered separately. Subsequently E. appeared voluntarily and served and filed a separate answer, denying the partnership, alleging that the goods were bought on his sole account, and setting up a counterclaim for a failure to deliver a part of the goods ordered. *Held,* that E. had a right so to appear and answer, and if the plaintiffs failed to demur or reply to the counterclaim judgment might be taken thereon.
2. Where the vendor delivered a part only of a bill of goods ordered, and there was evidence tending to show that he promised to deliver the remainder soon, it was error to instruct the jury that the neglect or failure of the vendees to notify the vendor that they would hold him responsible for the nonperformance of the contract would amount to a waiver of the delivery of the remainder of the goods.

APPEAL from the County Court of *Milwaukee* County.

After the affirmance of the order overruling the demurrer to the counterclaim contained in the answer of the defendant *Bartels* (see 54 Wis., 231), the plaintiffs replied to such counterclaim by a general denial. Other facts are stated in the opinion.

A motion for judgment, as by default, upon the counterclaim in the answer of the defendant *Espenhain,* was denied.

The trial resulted in a verdict for the plaintiffs, and from the judgment entered thereon the defendants appealed.

For the appellants there was a brief by *Cotzhausen, Sylvester, Scheiber & Jones,* and oral argument by *Mr. Cotzhausen.*

For the respondents there was a brief by *H. M. Finch,* of counsel, and the cause was argued orally by *Geo. P. Miller.*

COLE, C. J. Before proceeding to consider this cause upon the merits we deem it proper to make a remark upon a question of practice which is involved in the case. The defendants were sued as copartners. *Bartels* alone was served with process, and filed an amended answer, which was considered by this court on the former appeal. 54 Wis., 231. *Espenhain* made a voluntary appearance and served an answer on the 3d of September, 1881, in which, among other things, he denied that he and his co-defendant were partners, and alleged that the goods in question were purchased on his sole account. He also set up the same matters by way of counterclaim as were stated by *Bartels* in his amended answer. This answer of *Espenhain* seems to have been entirely ignored by the plaintiff's attorney, or treated as though it had not been properly served and was not a part of the record. We deem this a mistake. *Espenhain* had the right to appear and serve his answer when he did, without leave of the court, which, at the time, had not acquired jurisdiction of his person, upon the theory on which he defended the action. The plaintiff should have replied to his counterclaim unless they wished judgment to be taken upon it. On the issue made by his answer, if the partnership between him and his co-defendant were not established, still he would be liable, and the plaintiffs would be entitled to take a judgment against him for the amount found due them, under secs. 2884, 2885, R. S. Hence, he had the right to litigate the questions arising on his counterclaim. The learned counsel for the plaintiff insists that

because *Espenhain's* answer was never allowed by the court to be filed as an answer, it never became a part of the record any further than as it was used as evidence on the trial. But, as we have said, we do not think that position is correct. We shall not longer dwell on the point, having sufficiently indicated our view that *Espenhain's* answer is a legitimate part of the pleadings. Counsel can act upon this intimation as they may deem advisable.

This action is to recover a small balance due on a bill of goods sold the defendants by the plaintiffs. The amount in controversy is trifling, but the record presents a question of considerable interest and importance to the mercantile community. It appears that about January 22, 1880, a traveling salesman of the plaintiffs (who are merchants in Philadelphia) took an order of the defendants in Milwaukee for a bill of goods. The salesman had ample authority to make sales on behalf of the plaintiffs, and there can be no doubt but that the contract which he made with the defendants was a complete binding contract upon the parties. It is suggested on the brief of plaintiffs' counsel that the order which the salesman took was a mere proposal, which bound neither party until accepted by the plaintiffs. But the correctness of that view is abundantly disproved by the testimony of the salesman and the plaintiffs themselves.. They prove that the contract of sale which was made by the salesman was absolute and complete, and this circumstance distinguishes the case from that of *McKindly v. Dunham*, 55 Wis., 515, where the agent had no authority to make binding contracts of sale. But here he was clothed with full authority to make such contracts, and he sold the defendants a specific quantity of goods at the prices named. The goods were to be shipped from Philadelphia in a short time in the usual course of business. It is admitted that the entire bill of goods ordered was never forwarded. But the defendants received all which were sent, and have retained

them. In this action to recover the balance for the goods actually received, the defendants claim the right to recoup as damages the difference between the contract price and the market value of the articles not sent at or about the time such articles should have been delivered by the plaintiffs. The question is, Have they that right upon the facts disclosed on the trial? It was certainly the duty of the plaintiffs to send the entire bill of goods which they had sold, and undertaken to furnish; nothing short of this could be deemed a performance of the contract on their part. The reason why they failed to send the entire quantity ordered, is stated by one of them in his testimony as follows: " We did not ship all that order called for, but we shipped all included in our bills; we did not have all the goods in the store, and we were not able to procure them. Some of the goods had been manufactured expressly for ourselves, and manufacturers were not making them, and agents were out of other flannels, and their manufacturers were not making them. We made every effort to obtain the goods from agents who kept them. When we forwarded the bills, we wrote the defendants that we had received their order, and had endeavored to fulfil it to the letter, but regretted that we were out of some of the goods, and were not able to procure them." The defendants positively deny that they ever received any letter or notice from the plaintiffs saying they were unable to fill the order or furnish all the goods. On the contrary, *Mr. Bartels's* recollection is that at the bottom of the invoice sent the defendants the plaintiffs stated they would send the balance soon; and says that, acting upon the strength of such a statement, he wrote the plaintiffs on the 11th of March, 1880, requesting them to send the balance at once, as the goods were needed. This is a sufficient reference to the testimony to make intelligible some instructions of the court below.

Among other things, the learned county court told the

jury, in effect, that if they should find from the evidence that the plaintiffs were not able to fill the entire order, but sent on such order the goods in suit, with the invoice, and advised the defendants that they could not furnish the balance, and the defendants received this invoice and notice, and accepted the goods which were sent as a compliance with the contract, then the plaintiffs were entitled to recover the price of the goods actually sent and received. And the court restates almost the same proposition by directing the jury that if the defendants, at the time they received the goods which were sent, were advised of the fact that a portion of those ordered could not be delivered, yet received the goods with the intention of relinquishing any claim they might have for damages on account of the nonperformance of the contract on the part of the plaintiffs, the counterclaim must fail. But when the court came to instruct in respect to what would be a waiver by the defendants of a delivery of the entire bill, the jury were told that the defendants' neglect or failure to notify the plaintiffs within a reasonable time that they would hold them responsible for the nonperformance of their contract, would amount to such waiver. In other words, as we understand the charge, though the jury should find that when the goods which were sent were received there was a promise or assurance on the part of the plaintiffs that they would forward the balance soon, still, if the defendants neglected to notify the plaintiffs within a reasonable time that they should hold them to the full performance of the contract, the defendants would be deemed to have accepted the goods sent as a compliance with their order. This charge was excepted to, and it seems to us was erroneous. We may have misapprehended the real meaning of the learned county judge, but this is our construction of the charge. In our view it is misleading.

There are doubtless authorities which hold that if the buyer accepts and actually receives the goods with a knowl-

Elliott and another vs. Espenhain and another.

edge of their deficiency in quantity without objection, he waives all right of future objection on that ground. See *Barton v. Kane,* 18 Wis., 263, and authorities cited in the opinion. But it may admit of doubt whether this rule is entirely accurate and should be applied to transactions between merchants like the one under consideration. Suppose the plaintiffs had made delivery of most of the goods ordered, as they did, without any intimation that they could not send the balance. Would not the defendants have had the right to presume they would send the rest of the goods as soon as they had obtained them, and might they not accept a partial delivery without prejudice to their rights? In the case supposed, would it be necessary for the defendants to give notice that they did not accept those sent because they were not all which had been ordered, in order to insist upon their rights for a failure to perform? But, without dwelling on the point or attempting to decide it, it is clear there was evidence from which the jury might have found that when the plaintiffs made delivery of most of the goods they assured the defendants that the rest would be sent forward soon. But even in that case, according to our interpretation of the charge, the jury were told that the defendants would be bound to notify the plaintiffs, within a reasonable time, that they should hold them to a full performance, and a delay in giving such notice would warrant the inference that the defendants waived performance.

In opening the case to the jury the plaintiffs' counsel indulged in some severe strictures on the conduct of *Mr. Bartels,* which remarks were objected to by the opposing counsel as being unfair or not legitimate conclusions from the record. It seems to us these observations were not called for, and were well calculated to prejudice the defense. The rule which counsel should observe in arguing cases before a jury is clearly stated in *Brown v. Swineford,* 44 Wis., 282. It would be well for counsel to observe it in

Knowlton vs. The Milwaukee City R'y Co.

their practice.   The other points discussed by counsel on the argument will not be noticed.

The judgment of the county court, we think, must be reversed on account of error in the charge as to waiver.

  *By the Court.*— It is so ordered.