68 N.J. Super. 521 (1961)
172 A.2d 721
PETER N. PAULL, JULIUS KAUNACKI AND WILLIAM TROUTMAN, PLAINTIFFS,
v.
ALFRED R. PIERCE, DIRECTOR OF THE DEPARTMENT OF PUBLIC SAFETY OF THE CITY OF CAMDEN, JOSEPH HOOVEN, HOWARD CLAYTON, VINCENT CONLEY, SAMUEL SAUNDERS, ROLAND COMERFORD, WILLIAM KELLY, EDWARD WATSON, WILLIAM H. NEALE, JOHN W. WATKINS, WILLIAM YEAGER, STANEY ZUCHOWICZ, AND GEORGE WEBER, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided June 30, 1961.
*522 Mr. Salvatore J. Avena argued the cause for plaintiffs.
*523 Mr. Louis L. Goldman argued the cause for defendant, Alfred R. Pierce, Mayor of the City of Camden.
Mr. Anthony M. Lario argued the cause for defendants, Joseph Hooven, Howard Clayton, Vincent Conley, Samuel Saunders and Roland Comerford.
Mr. Frank E. Vittori (Mr. John Henry Reiners, Jr., attorney) argued the cause for defendant, William Kelly.
Mr. John F. Gerry (Messrs. Wallace, Douglas & Gerry, attorneys) argued the cause for defendants, Edward Watson, William H. Neale, John W. Watkins, William Yeager, Stanley Zuchowicz and George Weber.
WICK, J.S.C.
This is an action in lieu of prerogative writ challenging the legality of certain appointments of police officers by Alfred R. Pierce, Director of the Department of Public Safety of the City of Camden.
The City of Camden is a municipal corporation operating under the Civil Service statutes (R.S. 11:19-1 et seq.) insofar as regulations for the promotion of police personnel are concerned. On February 9, 1957 an examination for the position of Lieutenant was held by the Civil Service Commission at the request of the then Director of Public Safety. Based upon the results of that test, a list of qualified applicants was compiled by the Commission. This list was originally to expire on May 9, 1959, but was extended to May 8, 1960. R.S. 11:9-10 requires that an employment list must be promulgated for a period of no less than six months nor greater than three years. The then Director of Public Safety, on July 1, 1957, appointed the first seven on the aforesaid list to the position of Lieutenant. These men, in order of the results of the test, were as follows: William Neale, William Yeager, Donald Watson, Stanley Zuchowicz, John Watkins, Edward Watson and George Weber.
On January 28, 1960 the Board of Commissioners of the *524 City of Camden adopted an ordinance which, in part, provided:
"Section 1. There is hereby established a Police Department which shall consist of the Chief of Police, 6 Inspectors of Police, Chief Clerk, 4 Captains of Police, 7 Lieutenants of Police, 38 Sergeants of Police, 30 Detectives, 258 Patrolmen, 4 Police Matrons, 2 Janitors, 4 Chaplains, and Police Surgeon, who shall be known as `The Police Department of the City of Camden': provided that with the exception of Police Matron, Janitor, Chaplain and Police Surgeon, no person shall receive an appointment other than as Patrolman who has not been a member of the Police Force of the City of Camden for at least three years * * *."
This ordinance remained in effect until September 22, 1960 at which time an amendatory ordinance increasing the number of Inspectors of Police to eight was adopted.
On April 1, 1960 Donald Watson was appointed Inspector (temporary promotion). On April 21, 1960 the then Chief of Police, Gustave Koerner, retired and Donald Watson was immediately appointed Chief of Police. On that same day, Inspector Anthony Skolski (permanent) was suspended without pay pending the outcome of an indictment returned against him by the Camden County Grand Jury. Then William Yeager, Stanley Zuchowicz, George Weber, and Edward Watson were promoted from Lieutenant to Inspector of Police (temporary promotions). On May 3, 1960 William Neale and John Watkins were likewise promoted to Inspector (temporary promotions).
Also, on May 3, 1960 the following men were appointed Lieutenants of Police, replacing the Lieutenants who were appointed Inspectors: Howard Clayton, William E. Kelly, Roland E. Comerford, Vincent P. Conley, Joseph A. Hooven and Samuel J. Saunders. Thus, on May 4, 1960, there were one permanent Inspector (suspended), seven Inspectors (temporary promotions), one of whom had also been appointed Chief of Police, and six Lieutenants.
After making the above promotions, Mayor Pierce, Director of Public Safety, then requested the Civil Service Commission *525 to conduct examinations for the position of Inspector. The Civil Service Commission scheduled an examination with May 12, 1960 as the final day for filing applications. Only the seven Inspectors (temporary) filed such applications. Civil Service subsequently determined that there was no competitive situation since the number of vacancies equaled the number of applicants; and thus the President of the Commission announced on September 12, 1960 that these seven Temporary Inspectors were to become permanent without an examination under Civil Service Rule No. 24.
The plaintiffs, all of whom are citizens and taxpayers of the City of Camden as well as Sergeants in the Police Department of Camden, filed this action on May 27, 1960, naming Mayor Pierce as the sole defendant. An amended complaint was filed on December 27, 1960, adding the six Lieutenants who were appointed on May 3, 1960 as party defendants. At the second pretrial conference, the court suggested to plaintiffs' counsel that the seven Lieutenants, whose promotion to Inspector has herein been challenged, should also be joined as defendants. Thus a second amended complaint was filed on March 17, 1961 naming only six additional defendants. At the time of trial, the court was informed that plaintiff, Julius Kaunacki, had withdrawn from this action.
The theory of the plaintiffs' action is that these appointments made by Mayor Pierce to Inspector and Lieutenant are in excess of the number permitted by the ordinance then in effect and therefore are unlawful and illegal.
The plaintiffs have not in any manner disputed the defendant appointees' qualifications for the positions to which they were appointed. There is no question of the ability, integrity and dedication to duty of these appointees. In fact, these men are officers of the law of whom the citizens of the City of Camden can rightfully be proud. Nor can there be any question of the good faith of Mayor Pierce in making these appointments. Only after consultation with the Civil Service Commission which advised him that vacancies did *526 exist in these positions did the Mayor act. Furthermore these appointments were made in accordance with the Civil Service employment list then in effect. Unfortunately for all concerned, despite all these factors, there still remains the purely legal question of whether these appointments are unlawful as alleged by the plaintiffs because the number of appointees exceeds that provided for by the ordinance then in effect.
The appointments made prior to May 3, 1960 are clearly lawful. Prior to that date Donald Watson, William Yeager, Stanley Zuchowicz, George Weber and Edward Watson were promoted from Lieutenant to Inspector (temporary promotions), making a total of five Inspectors (temporary) plus Inspector Skolski (permanent but under suspension). The ordinance then in effect permitted a maximum of six Inspectors; there were, prior to May 3, 1960, only six Inspectors including Skolski.
However, on May 3, 1960, William Neale and John Watkins were both promoted to Inspector (temporary promotions), thus making seven Inspectors (temporary) and one permanent Inspector under suspension. However, previously on April 21, 1960, Donald Watson, an Inspector (temporary), had been further appointed to Chief of Police (temporary). Although Watson later resigned as Chief and was restored to his former position of Inspector, William Neale, another Inspector, was immediately appointed Chief upon Watson's resignation. The Chief of Police was a position authorized by ordinance; since it was occupied during the entire period in question by one of the Inspectors, the court, in determining the legality of these appointments, must eliminate one of these appointments from consideration. Because of this Inspectorship, the City of Camden did not suffer the financial burden of payment of an additional salary in excess of that provided by ordinance. Thus, for the purposes herein, there were one Chief of Police, one suspended Inspector (permanent), six Inspectors (temporary), and six Lieutenants.
*527 The ordinance in effect on May 3, 1960 provided for only six Inspectors. An amendatory ordinance increasing the number of Inspectors to eight was adopted on September 22, 1960. The defendants contend that that ordinance, since it is presently in force, should be controlling in determining the legality of these appointments. The court must disagree. The appointments challenged herein were made pursuant to the provisions of the ordinance in effect on May 3, 1960; therefore, the legality of these appointments must be determined in accordance with the provisions of that ordinance.
Rohrs v. Zabriskie, 102 N.J.L. 473 (Sup. Ct. 1926); Socony-Vacuum Oil Co. v. Mt. Holly, 135 N.J.L. 112 (Sup. Ct. 1947); Krugman v. Municipal Council of City of Clifton, 136 N.J.L. 32 (Sup. Ct. 1947); Concord Garden Apartments v. Board of Adjustment, 1 N.J. Super. 301 (App. Div. 1949), and San-Lan Builders, Inc. v. Baxendale, 28 N.J. 148 (1958), have been cited as authority for the defendants' position. However, each of these cases is distinguishable from that sub judice in that zoning ordinances, not ordinances establishing public positions, are involved. The exercise of zoning powers by municipalities has long been favored in the law and must be considered sui generis.
In regard to appointment to public positions, it has universally been held that there must be a vacant position before there can be a valid appointment. In Handlon v. Town of Belleville, 4 N.J. 99 (1950), involving the restoration of the plaintiff to his former position as clerk of the recorder's court, the Supreme Court, at page 108, stated:
"The claimed office has no existence in the law, for lack of an ordinance creating it. It is settled law that under R.S. 40:48-1, a municipal office or position, if not created by statute, can come into being only by ordinance of the local governing body. The sense of the statute is that, because the creation of offices and positions involves an increase of the financial burden of local government, the power is exercisable only by ordinance, a deliberative process requiring notice to the public. Toomey v. McCaffrey, 116 *528 N.J.L. 364 (Sup. Ct. 1936); Serritella v. Water Commission of Garfield, 128 N.J.L. 259 (Sup. Ct. 1942); Davaillon v. Elizabeth, 121 N.J.L. 380 (Sup. Ct. 1938); City of Orange v. Goldberg, 137 N.J.L. 73 (Sup. Ct. 1948)."
If a public position cannot have legal existence until created by ordinance, any appointment to that office prior to its creation must be meaningless.
In New Jersey State Lodge-Fraternal Order of Police v. Aaron, 39 N.J. Super. 423 (App. Div. 1956) a situation similar to that herein existed. In that case, as herein, the legality of certain police appointments made by the defendant Aaron, then Director of Public Safety of the City of Camden, was challenged. Eight Sergeants of Police had been appointed in excess of the number permitted by ordinance. The ordinance, as herein, was then amended, increasing the number of Sergeants permitted by eight. Although the Appellate Division held that the plaintiff, as a corporation, and not a claimant to these offices or taxpayer, did not have the proper status to challenge these appointments, the court, in passing, noted "that no serious pretense of defending the substantive validity of the appointments here in question is offered on behalf of the defendants," thus indicating that the amendatory ordinance had no effect upon the validity of the prior appointments. Also see In re Ray, 26 N.J. Misc. 56 (Cir. Ct. 1947), wherein it was held the eligibility of an elected official must be determined as of the date of election.
The basic issue is whether the suspension of Skolski has created a vacancy. If a vacancy was created, then all the appointments in question are lawful; however, if no vacancy was created, then one of the appointments to Inspector, being in excess of number permitted by ordinance, is unlawful.
"Vacancy" in office has been generally defined as having no technical meaning. An office is vacant whenever it is unoccupied by one who has the legal right to hold it and exercise the powers and perform the duties pertaining thereto. 67 C.J.S. Officers § 50, pages 206-207; 43 Words and *529 Phrases, pages 604-609; 3 McQuillin, Municipal Corporations (3d ed.), sec. 12.100. Several New Jersey cases also refer to "vacancy" in similar terms. See Davis v. Davis, 57 N.J.L. 80 (Sup. Ct. 1894); Board of Education of Newark in Essex County v. Civil Service Comm., 98 N.J.L. 417 (Sup. Ct. 1922), affirmed 99 N.J.L. 106 (E. & A. 1923); Fiscella v. Nulton, 22 N.J. Super. 367 (App. Div. 1952).
But, in applying the above definitions to specific facts, the courts have had much difficulty. For example, see Board of County Com'rs of Dearborn County v. Droege, 66 N.E.2d 134 (Ind. App. Ct. 1946), and Mason v. City of Los Angeles, 130 Cal. App. 224, 20 P.2d 84 (D. Ct. App. 1933), wherein contrary results were reached as to the effect of insanity of an officeholder. Neither respective counsel nor the court has found any precedent directly on the issue herein. However, in Kobylarz v. Mercer, 130 N.J.L. 44 (E. & A. 1942), involving the issue of whether acceptance of a commission in the United States Army by a municipal official creates a vacancy in the municipal position, the Court of Errors and Appeals stated these rudimentary principles which are applicable herein:
"And it is elementary that public office may not be vacated by judicial decree unless the disqualification be clear and imperative. It is not of the judicial function to lay down the grounds of forfeiture. Subject to constitutional limitations, such is essentially a legislative exercise; and the judicial authority is bound in this regard by the common law as modified by the law-making body. It is the province of that branch of the government to formulate the policy. When it has remained silent on the subject, and only then, the courts are at liberty to declare a policy compatible with the spirit of our laws and institutions and the general good and welfare, unless restrained by fundamental principles of the common law consistent with our Constitution * * *." (130 N.J.L., at page 47)
With the exception of R.S. 19:3-5 concerning incompatible offices, and N.J.S.A. 40:69A-166 dealing with public officeholders convicted of a crime involving moral turpitude, *530 the Legislature of New Jersey has not adopted any legislation stating, in express terms, acts which, by their nature, create a vacancy of public office. Several other jurisdictions (e.g., New York, Arizona, Florida and Montana) have adopted such a statutory procedure. Conviction of a felony is a usual statutory ground for forfeiture. For judicial construction of such statutes, see Davis v. Impelliteri, 197 Misc. 162, 94 N.Y.S.2d 159 (Sup. Ct. 1950); Smith v. Noeppel, 204 Misc. 49, 120 N.Y.S.2d 466 (Sup. Ct. 1953); State ex rel. De Concini v. Sullivan, 66 Ariz. 348, 188 P.2d 592 (Sup. Ct. 1948); State ex rel Anderson v. Fousek, 91 Mont. 448, 8 P.2d 791, 84 A.L.R. 303 (Sup. Ct. 1932); In re Advisory Opinion to Governor, 75 Fla. 674, 78 So. 673 (Sup. Ct. 1918).
The Minnesota Supreme Court in State ex rel. Carlson v. Strunk, 219 Minn 529, 18 N.W.2d 457 (1945), made a distinction between "suspension" and "vacancy." In holding that the suspension of a public officer did not create a vacancy, the court, 18 N.W.2d, at pages 459-460, stated:
"2. Did the legislature, by the quoted statute, intend to deprive the governor of his power to appoint an acting commissioner to serve during the suspension? The answer lies in the clear distinction between the situation created by a suspension and that created by the occurrence of a vacancy. Suspension becomes imperative pending the trial of a public officer for malfeasance or nonfeasance in office. A vacancy does not occur until the officer is removed following trial or is occasioned by some other event.
A suspension does not create a vacancy or remove an officer, `but merely prevents him, for the time being, from performing the functions of his office.' State ex rel. Clapp v. Peterson, 50 Minn. 239, 245, 52 N.W. 655, 656 * * *."
Herein Inspector Skolski was not removed from office but was merely suspended from active duty pending the outcome of the indictments returned against him. If he were to be cleared of all the charges against him (the court has been informed that several indictments are still pending), he would become eligible for reinstatement as Inspector. Furthermore, even though he has been suspended *531 without pay, there still remains the possibility that he might be entitled to recover his back salary under N.J.S.A. 40:46-34 if this suspension were to be "judicially declared illegal." See Graham v. City of Asbury Park, 64 N.J. Super. 385 (Law Div. 1960), Hinterberger v. City of Garfield, 52 N.J. Super. 526 (App. Div. 1958), wherein the terms "judicially declared illegal" are construed. If a suspension from office were to create a vacancy for an additional appointee, the financial burdens placed on the taxpayers might well be increased beyond that permitted by ordinance, thus defeating the purposes of requiring the creation of all public positions by either statute or municipal ordinance. See Handlon v. Town of Belleville, supra. These considerations, along with the admonishment by the Court of Errors and Appeals in Kobylarz v. Mercer, supra, against a judicial decree vacating an office unless the disqualification be clear, requires this court to hold that the suspension of a public official does not create a vacancy to which another appointment could be made.
William Neale and John Watkins were both appointed Inspectors on May 3, 1960; one of these appointments increased the number of Inspectors to one more than the controlling ordinance permitted. The difficulty is in determining which was the excessive appointment. The proofs as entered only indicate that both of these appointments were made on May 3, 1960. There is no indication as to which was prior in time on that day. The court, without being arbitrary, must determine which of these appointments should be declared unlawful.
Certain practical considerations must be weighed. William Neale is presently Chief of Police, having been appointed to that position upon Watson's resignation. To declare his appointment illegal would necessitate his removal as Chief, thus gravely affecting the working operations and harmony within the Police Department itself. Certainly such a result would not be in the best interest of either the Police Department or the taxpayers themselves. Thus, as a matter *532 of practical expediency, this court must, in the absence of proofs to the contrary, conclude that the appointment of John Watkins to Inspector on May 3, 1960 is unlawful and therefore he is to be immediately restored to his former position of Lieutenant of Police. Of course, the Director of Public Safety still has the right to make an additional appointment to Inspector of Police under the present ordinance. The logical candidate for this appointment would be Watkins.
The restoration of Watkins back to Lieutenant does not affect the validity of the six appointments to Lieutenant made by Mayor Pierce. The ordinance then in effect provided for seven Lieutenants; even including Watkins as a Lieutenant, there are only seven.
The motions reserved at the time of trial are hereby denied. Judgment may be presented in accordance with these conclusions.